2025 Tex. Bus. 6



**The Business Court of Texas,
Third Division**

| | | |
|---|---|---|
| SAFELEASE INSURANCE SERVICES LLC, | § § § § § | |
| *Plaintiff*, | | |
| v. | § | Cause No. 25-BC03A-0001 |
| STORABLE, INC., et al., | § § § § | |
| *Defendants*. | | |

═══════════════════════════════════════

**SYLLABUS**

═══════════════════════════════════════

On a motion to remand, the Court holds that the 30-day period for removing an action to the Business Court does not begin before the action is filed. Because Plaintiff filed its notice of removal within 30 days after this suit was filed, the notice was timely. The Court also adheres to its previous holding that an action may satisfy this Court's jurisdictional amount-in-controversy minimums even when no party seeks damages.[1]

---

[1] The syllabus was created by court staff and is provided for the convenience of the reader. It is not part of the Court's opinion, does not constitute the Court's official description or statement, and should not be relied upon as legal authority.



**The Business Court of Texas,**
**Third Division**

| | | |
|---|---|---|
| SAFELEASE INSURANCE SERVICES LLC, | §<br>§<br>§ | |
| *Plaintiff,* | §<br>§ | Cause No. 25-BC03A-0001 |
| v. | § | |
| STORABLE, INC., et al., | §<br>§ | |
| *Defendants.* | §<br>§ | |

## OPINION AND ORDER

¶1 Before the Court is a motion to remand filed by defendants Storable, Inc., RedNova Labs, Inc., SiteLink Software, LLC, Easy Storage Solutions, LLC, Bader Co., and Property First Group, LP (collectively, Defendants). Having considered the arguments of the parties and the governing law, the Court **DENIES** the motion to remand. The Court holds that (1) the deadline for removing an action does not begin running before the action is filed, and (2) a party need not seek damages for an action to meet this Court's jurisdictional amount-in-controversy requirements.

## Background

¶2      This suit arises out of a dispute between plaintiff SafeLease Insurance Services LLC (SafeLease), which provides insurance for self-storage facilities, and Defendants, who license facility-management software (FMS) to such facilities. The dispute centers on SafeLease's access to information maintained on Defendants' software by self-storage facilities, which SafeLease uses in providing insurance to those facilities or their individual customers. Until recently, SafeLease accessed the software as an authorized user on its customers' accounts, meaning that it did not have a separate access agreement with Defendants.

¶3      In late 2024, Defendants began restricting SafeLease's access to one of its three FMS platforms, storEDGE. The parties disagree as to the impetus of these actions: SafeLease alleges that Defendants are seeking to drive it out of the self-storage insurance market to benefit Defendants' own insurance products, while Defendants counter that they are enforcing their software's terms of agreement and mitigating security threats posed by SafeLease's misuse of their software.

¶4      SafeLease sued Defendants in the 345th District Court in Travis County on December 30, 2024. SafeLease sought a temporary restraining order (TRO) and injunctive relief to compel Defendants to restore SafeLease's authorized-user access to storEDGE and prohibit Defendants from removing or restricting SafeLease's access to storEDGE or Defendants' other two FMS platforms, SiteLink

and Easy Storage Solutions (ESS). The District Court granted (and later extended) the TRO but denied the temporary injunction (TI) on January 21, 2025, after an evidentiary hearing. Defendants then locked SafeLease out of all three of its FMS platforms. On January 28, SafeLease amended its petition to add allegations about Defendants' post-injunction actions and new tortious-interference claims.

¶5 SafeLease removed the action to this Court the next day, again seeking a TRO and TI to protect its access to the information on Defendants' software while the suit is pending. The Court denied the TRO on January 30 and set the TI for hearing on February 11. In the meantime, Defendants moved to remand the case. It is to that motion that the Court now turns.

## Analysis

¶6 Defendants assert that the Court must remand for two reasons: first, removal was untimely because it was not filed within 30 days of when SafeLease "discovered, or reasonably should have discovered, facts establishing the business court's authority to hear the action," which Defendants assert occurred before the lawsuit was filed; second, the action does not meet the Court's jurisdictional amount-in-controversy requirements because the action seeks only equitable relief and not money damages. Both arguments fail.

### A.  SafeLease's removal was timely.

¶7    Under Section 25A.006 of the Government Code and Texas Rule of Civil Procedure 355, if an action filed in a district court or county court at law is within the Business Court's jurisdiction and venue, a party can remove the action to the Business Court by timely filing a notice of removal in both courts.[1] A notice of removal is timely if it is filed within 30 days after (a) the party "discovered, or reasonably should have discovered, facts establishing the business court's authority to hear the action" or (b) a TI is granted or denied, if the TI application was pending when the party "discovered, or reasonably should have discovered, facts establishing the business court's authority to hear the action."[2]

¶8    Defendants do not dispute that SafeLease filed its notice of removal within 30 days of filing suit and just over a week after the district court denied the TI application filed with the suit. But Defendants argue that SafeLease "discovered, or reasonably should have discovered" the facts that give the Court jurisdiction over the action well before SafeLease filed suit. Defendants provide no evidence for their assertions but contend that SafeLease's pleadings establish that SafeLease knew all the relevant facts before filing suit, meaning it had notice of those facts more than 30 days before the January 29 notice of removal.

---

[1] TEX. GOV'T CODE § 25A.006(d)–(f); TEX. R. CIV. P. 355.

[2] TEX. R. CIV. P. 355(c)(2); *see also* TEX. GOV'T CODE § 25A.006(f)(1).

¶9    The Court holds that the 30-day removal deadlines in Section 25A.006 and Rule 355 do not begin running before the lawsuit is filed. Both the statute and the rule pivot on the discovery of facts "establishing the business court's jurisdiction to hear *the action*."[3] Before suit is filed, there is no "action" for the court to have authority over.[4] When undefined,[5] the Texas Supreme Court[6] and this Court[7] have construed the term "action" to refer to a lawsuit or judicial proceeding generally and the term "claim" to refer to an individual theory of liability or cause of action asserted within a lawsuit.[8] Consistently, the Texas Business Court has held

---

[3] TEX. GOV'T CODE § 25A.006(f)(1) (emphasis added); *see also* TEX. R. CIV. P. 355(c)(2) (using same language except term "authority" is substituted for "jurisdiction").

[4] *Tema Oil & Gas Co. v. ETC Field Servs., LLC*, 2024 Tex. Bus. 3 at ¶ 15, 2024 WL 5337411, at *3 (Tex. Bus. Ct. Nov. 6, 2024); *C Ten 31 LLC ex rel. Summer Moon Holdings LLC v. Tarbox*, 2025 Tex. Bus. 1 at ¶¶ 26–27, 2025 WL 224542, at *7 (Tex. Bus. Ct. Jan. 3, 2025).

[5] When these terms are defined by the statute, the Texas Supreme Court employs the definition given. *E.g.*, *Montelongo v. Abrea*, 622 S.W.3d 290, 300 (Tex. 2021) ("By defining 'legal action' to include not just 'lawsuits,' 'petitions,' 'pleadings,' and 'filings,' but also 'causes of action,' 'cross-claims,' and 'counterclaims,' the Act permits a party to seek dismissal within sixty days after service of a cause of action or claim, even if it's not 'early' in the litigation.").

[6] *See Off. of the Att'y Gen. of Tex. v. C.W.H.*, 531 S.W.3d 178, 183 (Tex. 2017) (quoting *Jaster* and *Thomas* for meaning of "action"); *Jaster v. Comet II Constr., Inc*, 438 S.W.3d 556, 563–64 (Tex. 2014) ("The common meaning of the term 'action' refers to an entire lawsuit or cause or proceeding, not to discrete 'claims' or 'causes of action' asserted within a suit, cause, or proceeding."); *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008) (distinguishing between lawsuits and causes of action in interpreting "health care liability claim"); *Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex. 1995) ("The term 'action' is generally synonymous with 'suit[.]'"); *see also Montelongo*, 622 S.W.3d at 301.

[7] *C Ten*, 2025 Tex. Bus. 1 at ¶¶ 25–31, 2025 WL 224542, at *7–9.

[8] Thus, this analysis is distinct from limitations analyses, which focus on when an individual claim accrued—something that can and typically does occur before suit is filed.

that "[a] civil action is a lawsuit."[9] A civil suit, or action, is "commenced by a petition filed in the office of the clerk."[10] This Court had no jurisdiction or authority to decide this "action" before it came into existence, which occurred when the petition was filed. Because SafeLease filed its notice of removal within 30 days of when it filed suit and within eight days of the district court's TI ruling, the notice was timely.

¶10    In addition to being consistent with a plain reading of the statutory text, this outcome avoids a host of practical difficulties with Defendants' approach. Under Defendants' theory, the 30-day deadline begins running when the parties have knowledge of the underlying facts that give rise to claims that fall within this Court's jurisdiction. If that were the case, the removal window could begin *and end* before a plaintiff files suit—*even for other parties*. Section 25A.006 and Rule 355 apply the same deadline to any "party" seeking to remove an action to this Court.[11] A defendant with knowledge of the jurisdictional facts would have no opportunity to timely remove a case if the plaintiff waited more than 30 days to file suit.[12] The

---

[9] *Tema*, 2024 Tex. Bus. 3 at ¶ 15, 2024 WL 5337411, at *3; *C Ten*, 2025 Tex. Bus. 1 at ¶¶ 26–27, 2025 WL 224542, at *7; *Sebastian v. Durant*, 2025 Tex. Bus. 4 at ¶ 16, 2025 WL 394634, at *2 (Tex. Bus. Ct. Feb. 4, 2025).

[10] TEX. R. CIV. P. 22.

[11] *See* TEX. GOV'T CODE § 25A.006(f)–(j); TEX. R. CIV. P. 355.

[12] Defendants argue that this will not occur because defendants will not know the amount of plaintiffs' damages or what claims they will bring. But it is plausible that there will be circumstances in which a defendant knows, or reasonably should know, what kinds of claims the plaintiff intends to

extended deadline for pending TI applications could likewise never apply when the underlying facts were known before suit was filed.[13]

¶11    Defendants assert that allowing a plaintiff to file suit in one forum then remove to another forum 30 days later enables forum shopping, which is what they contend SafeLease did here. But the Legislature chose to authorize removal by "[a] party,"[14] rather than limiting removal to "defendants" as in the federal removal statute.[15] This plainly enables removal by plaintiffs even though they also chose the original venue. To the extent the process can be abused for forum shopping, that risk is present in other Texas procedures, such as the plaintiff's right to nonsuit, and Texas law has mechanisms for addressing it.[16] And regardless, this Court must effectuate the statute as written and will not second guess the policy determinations made by the Legislature—the body duly elected to make such policy decisions.[17]

---

assert and the extent of the damages—including, for example, when the parties engaged in pre-suit settlement discussions.

[13] *See* TEX. GOV'T CODE § 25A.006(f)(2); TEX. R. CIV. P. 355(c)(2)(B).

[14] TEX. GOV'T CODE § 25A.006(d); *see also* TEX. R. CIV. P. 355(a).

[15] 28 U.S.C. §§ 1441(a), 1446(a).

[16] *See, e.g.*, TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE § 10.001(1); *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (upholding sanctions against counsel who filed seventeen nearly identical cases, and then nonsuited sixteen of them, for the purpose of securing a particular forum); *In re Boehme*, 256 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *In re Bennett* for the proposition that "attorneys who abuse the legal process—as through improper forum-shopping— may be sanctioned").

[17] *See, e.g.*, *Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 857 (Tex. 2024) ("[W]e do not ignore a statute's text to impose our own judicial meaning to reach a certain result, even if [] we[] think the statute unwise. Instead, we must refrain from rewriting text that lawmakers chose." (internal citations and quotation marks omitted)).

**B.     The amount in controversy in this case meets the Court's jurisdictional threshold.**

¶12     SafeLease alleges that this case falls within this Court's jurisdiction under Section 25A.004(b), (d), and (e) of the Texas Government Code and that the amount in controversy exceeds the $5 million and $10 million minimums under those provisions.[18] Defendants do not attempt to disprove SafeLease's specific factual allegations; instead, they contend that SafeLease cannot meet the monetary thresholds because it does not seek an award of damages. The Court disagrees. As both the Texas Supreme Court and this Court have recognized, "the phrase 'amount in controversy,' in the jurisdictional context, means 'the sum of money *or the value of the thing* originally sued for[.]'"[19] Accordingly, both the Texas Supreme Court and this Court have held that actions in which damages were not sought nevertheless could satisfy jurisdictional amount-in-controversy minimums.[20]

¶13     Defendants rely on *Medina v. Benkiser*, a case out of the First Court of Appeals in Houston, to argue that a claim for damages is the only way to satisfy

---

[18] For example, SafeLease alleges that the action puts at risk the entire $140 million value of its business and $600 million worth of insurance contracts.

[19] *Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 361–62 (Tex. 2000) (emphasis in original) (quoting *Gulf, C. & S.F.Ry. Co. v. Cunnigan,* 95 Tex. 439, 441, 67 S.W. 888, 890 (1902)); *see also C Ten*, 2025 Tex. Bus. 1 at ¶ 32, 2025 WL 224542, at *9.

[20] *Tune*, 23 S.W.3d at 362 (holding that appeal from denial of concealed-handgun license satisfied amount-in-controversy requirement because of value of rights at issue); *Tex. Dep't of Public Safety v. Barlow*, 48 S.W.3d 174, 176 (Tex. 2001) (holding that appeal from suspension of driver's license satisfied amount-in-controversy requirement because of value of rights at issue); *C Ten*, 2025 Tex. Bus. 1 at ¶ 32, 2025 WL 224542, at *9 (holding that amount-in-controversy requirement may be met in injunctive and declaratory action).

amount-in-controversy minimums.[21] But *Medina* is distinguishable—it dealt with whether a statutory county court at law had jurisdiction to decide an injunctive suit arising under the Election Code.[22] The relief sought related to the procedures a political party would follow at its state convention, and there was no discussion of any argument that the rights sued for had any monetary value.[23] Even if *Medina* were not distinguishable, however, this Court is bound to follow Texas Supreme Court precedent.[24]

## Conclusion

¶14    The Court concludes that SafeLease's notice of removal was timely and Defendants have not shown that the amount-in-controversy falls below the Court's jurisdictional minimums. Defendants' motion to remand is therefore DENIED.

SIGNED ON: February 10, 2025.

Hon. Melissa Andrews
Judge of the Texas Business Court,
Third Division

---

[21] 262 S.W.3d 25 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

[22] *Id.* at 26–27.

[23] *See id.*

[24] Texas courts of appeals have likewise considered the value of non-monetary relief in determining whether an amount-in-controversy threshold is met. *See, e.g.*, *Harris v. State*, 402 S.W.3d 758, 763 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *In re Commitment of Richards*, 202 S.W.3d 779, 789–90 (Tex. App.—Beaumont 2006, pet. denied).