

# The Business Court of Texas, Third Division

| | | |
|---|---|---|
| JERRY B. REED, | § | |
| *Plaintiff,* | § § § | |
| v. | § § | Cause No. 25-BC03A-0007 |
| ROOK TX, LP, et al., | § § | |
| *Defendants.* | § § | |

## *Syllabus**

On a motion to remand, the Court holds that this action concerns a limited partnership's "governance, governing documents, or internal affairs," and thus falls within the Court's jurisdiction under Section 25A.004(b)(2) of the Government Code, because it concerns when the partnership was formed, whether it was formed for improper purposes, and whether the plaintiff can recover partnership proceeds from its partners and others. In doing so, the Court rejects the movant's argument that Section 25A.004(b)(2) applies only if an organization's governance, governing documents, or internal affairs are the predominant focus of the case.

---

* The syllabus was created by court staff and is provided for the convenience of the reader. It is not part of the Court's opinion, does not constitute the Court's official description or statement, and should not be relied upon as legal authority.



## The Business Court of Texas, Third Division

JERRY B. REED,

  *Plaintiff,*

v.

ROOK TX, LP, et al.

  *Defendants.*

§
§
§
§
§
§
§
§

Cause No. 25-BC03A-0007

## OPINION AND ORDER

¶1    Before the Court is plaintiff Jerry Reed's motion to remand, the response filed by defendants Rook TX, LP (Rook TX) and Rook GP, LLC (Rook GP) (collectively, Rook), Reed's reply, and Rook's sur-reply.[1] The Court DENIES the motion.

### Introduction

¶2    Reed won a $7.5 million Lotto Texas jackpot in May 2023. In this suit, he alleges that his winnings would have been $95 million greater if Rook and other

---

[1] Rook's Motion for Leave to File Sur-reply is GRANTED.

defendants had not illegally manipulated the system to enable Rook to claim the $95 million jackpot in April 2023. With respect to Rook, Reed alleges that Rook GP misrepresented Rook TX's date of formation to the State of Texas when it claimed the $95 million lottery winnings and that Rook was created to hide the identity of the defendant-conspirators who rigged the lottery.

¶3     The question before the Court is whether it has jurisdiction over the action—principally, whether this is an action "regarding" Rook's "governance, governing documents or internal affairs."[2] The Court holds that it has jurisdiction over this action because Reed's claims against Rook (and against all defendants through his derivative theories) concern (a) Rook's formation, as effectuated by its governing documents, (b) the legitimacy of Rook's purpose and operations, and (c) whether Reed can recover Rook's lottery proceeds from Rook and/or its interest holders and other payees. While these are not the only matters that Reed's action concerns, neither are they tangential or extraneous matters.

## Procedural Background

**A.    Reed's suit alleges that Rook was created to hide the identity of conspirators who rigged the April 2023 lottery and lied about its formation date to claim the lottery winnings.**

¶4     Reed brought this suit in the 353rd District Court in Travis County, Texas. In his second amended petition, Reed asserts claims for "money had and

---

[2] TEX. GOV'T CODE § 25A.004(b)(2).

received,"[3] negligence *per se*, and four derivative theories of liability: civil conspiracy, "aiding and abetting," "assisting and participating," and "concert of action."[4] At this stage, the Court will presume, without deciding, that Reed has pleaded viable causes of action.

¶5    Reed's claims center on the same factual nexus: defendants conspired to rig the April 2023 lottery through conduct that violated Chapter 466 of the Government Code ("State Lottery Act") and Chapter 401 of the Administrative Code ("Administration of State Lottery Act"). Specifically, he alleges:

- Rook violated Sections 466.307 and 466.308 of the Government Code, which make it a crime to (a) "intentionally or knowingly influence[] or attempt[] to influence the selection of the winner of a lottery game"[5] or (b) claim, or aid another in claiming, "a lottery prize or a share of a lottery prize by means of fraud, deceit, or misrepresentation."[6]

- Other defendants violated Sections 466.305 and 466.3054, which bar the sale of lottery tickets on credit and certain group-purchase arrangements.[7]

---

[3] A claim for "money had and received" is equitable in nature. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) (citing *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007)). It is "a category of general assumpsit to restore money where equity and good conscience require refund." *Id.* (quoting *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.)). It is a quasi-contractual doctrine to prevent unjust enrichment. 64 TEX. JUR. 3d *Restitution Etc.* § 4; *see also Plains Expl.*, 473 S.W.3d at 302 n.4; *MGA*, 358 S.W.3d at 815.

[4] 2d Am. Pet. at 14–16.

[5] 2d Am. Pet. at 13; *see also* TEX. GOV'T CODE § 466.307(a), (b).

[6] 2d Am. Pet. at 12–13; *see also* TEX. GOV'T CODE § 466.308(a), (c).

[7] 2d Am. Pet. at 8, 13; *see also* TEX. GOV'T CODE §§ 466.305, 466.3054. Reed's pleadings also mention Section 466.155 but do not relate any of the factual allegations to that statute, which relates to the denial, suspension, or revocation of a license to sell lottery tickets. TEX. GOV'T CODE § 466.155; 2d Am. Pet. at 16.

- All defendants violated section 401.304 of the Administrative Code, which sets out the general "draw game" rules, including the procedures for selling tickets and claiming draw game prizes.[8]

¶6     With respect to Rook, Reed alleges that Rook violated Section 466.308 by "misrepresenting the creation date of the entity claiming the $95 million jackpot and the date that entity received the ticket."[9] Specifically, Reed asserts that when Rook GP claimed the lottery prize on behalf of Rook TX, it represented that Rook TX was formed on March 1, 2023 and received the winning lottery ticket on April 21, 2023, but Rook TX was not actually formed until June 15, 2023—after the April 2023 lottery drawing.[10] He also alleges that Rook was formed as a "vehicle[] to hide the identity of the company(s) and individual(s) who received the proceeds of the illegal game rigging scheme."[11]

## B.     Rook removed the action to this Court, and Reed moved to remand.

¶7     Rook timely removed Reed's suit to this Court. The notice of removal principally asserts that the Court has jurisdiction over the action under Section 25A.004(b)(2) of the Government Code, which applies to "an action regarding the governance, governing documents, or internal affairs of an organization."[12] Rook

---

[8] 2d Am. Pet. at 10–11; *see also* TEX. ADMIN. CODE § 401.304.

[9] 2d Am. Pet. at 12.

[10] *Id.*

[11] *Id.*

[12] Notice of Rem'l at 1–3; TEX. GOV'T CODE § 25A.004(b)(2). Reed does not dispute that Section 25A.004(b)'s amount-in-controversy requirement is satisfied here.

argues that the Court must consider its certificate of formation and internal affairs to determine whether Rook misrepresented its formation date or was created for the purpose of hiding the identities of the lottery winners.[13]

¶8 Reed moved to remand, arguing that the Court lacks jurisdiction.[14] According to Reed, this action is "about a fraudulent scheme to rig the Texas Lottery and a subsequent misrepresentation made to the State of Texas," but it does not pertain to Rook's governance or governing documents because his claims "can be proven through publicly available records—no reference to internal governance or governing documents is required."[15] He set the motion for written submission, and it is now before the Court.

## Analysis

### A. Section 25A.004(b)(2) applies to actions that concern an organization's governance, governing documents, or internal affairs.

¶9 Section 25A.004(b)(2) grants this Court jurisdiction over "an action regarding the governance, governing documents, or internal affairs of an

---

[13] Notice of Rem'l at 2–3. Rook also alleges jurisdiction under part (b)(7), governing actions "arising out of the Business Organizations Code," and supplemental jurisdiction under part (f). *Id.* at 3–4; TEX. GOV'T CODE § 25A.004(b)(7), (f). Reed's motion to remand does not address these grounds, and the Court need not address them because it determines that jurisdiction exists under part (b)(2).

[14] "Section 25A.006(d) of the Government Code and Rule 355 of the Texas Rules of Civil Procedure dictate that if this Court lacks jurisdiction over a removed action, the Court must remand the action to the court from which it was removed." *C Ten 31 LLC v. Tarbox*, 2025 Tex. Bus. 1, ¶ 7, 708 S.W.3d 223, 229 (3d Div.) (citing TEX. GOV'T CODE § 25A.006(d) and TEX. R. CIV. P. 355(f)(1)).

[15] Mot. to Remand at 2–3.

organization" when the amount in controversy exceeds $5 million.[16] The meaning of this provision is a question of law,[17] which the Court determines from the text of the statute, giving undefined words their ordinary meaning, as understood from reading the statute as a whole and in context of the surrounding words and statutory structure.[18] Absent ambiguity, the inquiry begins and ends with the statutory text— "the alpha and the omega of the interpretive process."[19]

¶10 The undefined[20] term "action," as used in Section 25A.004, refers to the lawsuit or judicial proceeding generally, as opposed to only individual causes of action or theories of liability.[21] Likewise, the term "regarding" is undefined in the

[16] TEX. GOV'T CODE § 25A.004(b)(2).

[17] *C Ten*, 2025 Tex. Bus. 1, ¶ 8, 708 S.W.3d at 229 & n.4 (citing *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024); *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 700 (Tex. 2015)).

[18] *C Ten*, 2025 Tex. Bus. 1, ¶ 8, 708 S.W.3d at 229 (citing *Malouf*, 694 S.W.3d at 718; *Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 460–62 (Tex. 2024); *City of Austin v. Quinlan*, 669 S.W.3d 813, 821 (Tex. 2023); *U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 390 n.3 (Tex. 2023) (per curiam); *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 75 (Tex. 2011)).

[19] *C Ten*, 2025 Tex. Bus. 1, ¶ 8, 708 S.W.3d at 230 (quoting *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017); citing *City of Denton v. Grim*, 694 S.W.3d 210, 214 (Tex. 2024); *Brown v. City of Houston*, 660 S.W.3d 749, 752 (Tex. 2023); *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 (Tex. 2006)).

[20] When the Legislature wants a word or phrase to have a specific meaning that differs from or is narrower or broader than it ordinarily carries, the Legislature can (and frequently does) so define the term in the statute. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 27.001(6) (defining "legal action" broadly, then carving out specific exceptions).

[21] *C Ten*, 2025 Tex. Bus. 1, ¶ 8, 708 S.W.3d at 235 (citing *Off. of the Att'y Gen. of Tex. v. C.W.H.*, 531 S.W.3d 178, 183 (Tex. 2017); *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563–64 (Tex. 2014) (plurality opinion); *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008); *Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex. 1995)); *see also SafeLease Ins. Servs. LLC v. Storable, Inc.*, 2025 Tex. Bus. 6 ¶ 9, 707 S.W.3d 130, 132–33 (3d Div.); *Osmose Utils. Servs., Inc. v. Navarro Cnty. Elec. Coop.*, 2025 Tex. Bus. 3 ¶ 27, 707 S.W.3d 117, 123 (1st Div.).

statute and can be given its common, ordinary meaning, as understood in context.[22] "The ordinary meaning of 'regarding' is expansive and synonymous with terms like 'respecting,' 'concerning,' or 'referring to.'"[23]

¶11　Chapter 25A defines "governing documents" as "the instruments, documents, or agreements adopted under an organization's governing law to govern the organization's formation and internal affairs"[24] and lists specific types of documents that fall within this definition, including a certificate of formation.[25] It defines "internal affairs" as "the rights, powers, and duties of an organization's governing persons, officers, owners, and members and matters relating to the organization's membership or ownership interests."[26] It does not define "governance" but defines a "governing person" as one who is entitled to "manage and direct an organization's affairs under the governing documents and governing law."[27] This

---

[22] *See, e.g.*, *Am. Pearl Grp., L.L.C. v. Nat'l Payment Sys., L.L.C.*, No. 24-0759, 2025 WL 1478179, at *3 (Tex. May 23, 2025); *Tex. Health & Hum. Servs., Comm'n v. Est. of Burt*, 689 S.W.3d 274, 280 (Tex. 2024); *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 253–54 (Tex. 2023); *Jaster*, 438 S.W.3d at 563.

[23] *Mosaic Baybrook One*, 674 S.W.3d at 254 (citing definitions of "regarding" in WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1622 (1996), WEBSTER'S NEW COLLEGIATE DICTIONARY 965 (1980), and THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed.) (2011)); *see also Integrity Mktg. Grp., LLC v. Smith*, No. 05-23-00786-CV, 2024 WL 4533043, at *5 (Tex. App.—Dallas Oct. 21, 2024, no pet.) (citing definitions of "regarding" in THE OXFORD DESK DICTIONARY AND THESAURUS (2d Ed. 2007) and MERRIAM-WEBSTER.COM).

[24] TEX. GOV'T CODE § 25A.001(3).

[25] *Id.* § 25A.001(3)(A).

[26] *Id.* § 25A.001(7).

[27] *Id.* § 25A.001(5)

indicates that "governance" relates to the management and direction of the entity's affairs under its governing documents and applicable law.

¶12　Thus, when the amount-in-controversy requirement is met, Section 25A.004(b)(2) gives this Court jurisdiction over a lawsuit or judicial proceeding ("action") concerning or respecting ("regarding") the management and direction of an organization's affairs ("governance"), the documents adopted to govern its formation and internal affairs ("governing documents"), its ownership or membership interests ("internal affairs"), or the rights, powers, and duties of its governing persons, officers, owners, or members ("internal affairs").[28]

## B.　This action concerns Rook's governance, governing documents, or internal affairs.

¶13　Reed alleges that Rook violated Section 466.307 by intentionally and knowingly influencing the selection of the winner of the April 2023 lottery and participating in fraudulent conspiracy, including that Rook was created to claim the lottery winnings while concealing the identities of those involved in the alleged scheme. Whether Rook was created as part of a scheme to rig the lottery and for the purpose of concealing the identities of those involved is a matter concerning Rook's management and direction, the validity of its formation, and the duties of its governing persons—all matters covered by 25A.004(b)(2).[29] These allegations go to the

---

[28] *Id.* § 25A.001(3), (5), (7).

[29] *See id.* §§ 25A.001(3), (5), (7); 25A.004(b)(2).

8

heart of Rook's existence: is it a legitimate business or a shell created to effectuate an illegal conspiracy.

¶14    Reed also alleges that Rook violated Section 466.308 because Rook TX "claim[ed] a lottery prize … by means of fraud, deceit, or misrepresentation"[30] and Rook GP "aided" Rook in doing so.[31] The "fraud, deceit, or misrepresentation" Reed relies on is the misrepresentation of Rook's date of formation and of the date Rook received the winning ticket, both of which are false, according to Reed, because they predate Rook's actual, legal formation. This theory necessarily concerns the legal documents adopted to govern Rook's formation—specifically, its initial certificate of limited partnership. As Rook points out, a certificate of formation is one of the specific examples of a "governing document" listed in the statutory definition.[32]

¶15    Reed argues that Rook's date of formation can be determined from public records, relying on Section 17-201(b) of the Delaware Code and printouts from a public website listing the formation dates for Rook GP and Rook TX as June 14 and 15, 2023, respectively.[33] Rook responds that the fact that the certificate of formation is a public record is irrelevant, and in fact, certificates of formation often are

---

[30] 2d Am. Pet. at 12; *see* TEX. GOV'T CODE § 466.308(a)(1).

[31] 2d Am. Pet. at 12–13; *see* TEX. GOV'T CODE § 466.308(a)(2).

[32] TEX. GOV'T CODE § 25A.001(3)(A).

[33] Mot. to Remand at 3 & Exhs. 2, 3.

public records.[34] Rook also objects that the website printouts Reed relies on are not competent evidence and violate the best-evidence rule.[35]

¶16    Setting aside Rook's evidentiary objections, the Court agrees that the fact that a governing document is a public record—as is often the case—does not undermine the Court's jurisdiction. Likewise, the fact that a public website posts an entity's formation date online does not divorce that date from the governing document that effectuates the underlying formation and is the basis for the posted date.[36]

¶17    Reed cites Section 17-201(b) for the proposition that Rook was "formed at the time of the filing of the initial certificate of limited partnership in the Office of the Secretary of State" but omits the rest of that sentence: "or at any later date or time specified in the certificate of limited partnership if, in either case, there has been substantial compliance with the requirements of this section."[37] Thus, even under this statute, the date of formation cannot be determined without reviewing the certificate to determine the formation date specified in it and whether it substantially complies with the statute.[38] Moreover,, merely filing a document

---

[34] Resp. to Mot. to Remand at 4.

[35] *Id.* at 4 n.2; *see also* TEX. R. EVID. 1002.

[36] As Rook demonstrates, an effort to try to prove this date without the underlying documents may result in an objection under the best-evidence rule. *See* TEX. R. EVID. 1002.

[37]  DEL. CODE tit. 6, § 17-201(b).

[38] *Id.*; *see also id.* § 17-202–206 (additional certificate requirements); *id.* § 17-207 (liability for false statements).

labelled as a certificate of limited partnership does not, alone, create a duly formed limited partnership. The statute requires the certificate to meet certain specifications.[39] It also requires a partnership agreement[40]—another "governing document" under Chapter 25A.[41] Disputes over the validity and effectiveness of a limited partnership's formation and certificate of formation necessarily revolve around the partnership's governing documents and internal affairs.

¶18    In short, Reed's action concerns the date of Rook's formation and whether Rook was formed for improper purposes and in furtherance of the alleged conspiracy to enable Rook to fraudulently claim the April 2023 lottery winnings. The action necessarily concerns Rook's governance, governing documents, or internal affairs, and therefore falls within this Court's jurisdiction under Section 25A.004(b)(2). Importantly, these factual bases for liability are not limited to any one of Reed's causes of action: All of Reed's causes of action rely on the alleged scheme for Rook to illegally claim the April 2023 lottery, and Reed seeks to hold all defendants liable for the alleged misdeeds of the others through his derivative claims.

---

[39] *Id.* § 17-201(a).

[40] *Id.* § 17-201(d).

[41] TEX. GOV'T CODE § 25A.001(3)(C).

**C. The Court applies Section 25A.004(b)(2) as written and declines to inject an unstated predominance test into the statute.**

¶19 Reed argues that Section 25A.004(b) is intended to cover "internal" business disputes, which he describes as disputes that "directly challenge or seek to enforce specific rights or duties of shareholders, owners, and managers of Texas businesses," as opposed to "external" business disputes, which he describes as disputes "between a third party and the defendants," like those covered in Section 25A.004(d).[42] First, Reed's description of "internal" disputes essentially tracks part of the statute's definition of "internal affairs,"[43] but (b)(2) is not limited to actions concerning "internal affairs."[44] By using the disjunctive "or," it extends to actions concerning a business's internal affairs *or* governance *or* governing documents.[45] Second, if the Legislature wanted to exclude actions brought by third parties from (b)(2), it knew how to do so.[46] Some provisions of Section 25A.004(b) *do* depend on "the nature of the parties to the action."[47] Parts (b)(3) and (b)(4)

---

[42] Reply to Mot. to Remand at 2–3 (emphases omitted).

[43] TEX. GOV'T CODE § 25A.001(7)(A) ("the rights, powers, and duties of an organization's governing persons, officers, owners, and members").

[44] *Id.* § 25A.004(b)(2).

[45] *Id.* (using "or" rather than "and" when listing relevant subject matters)

[46] *See* n.54, *infra*; *Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 855–56 (Tex. 2024) (observing that the Legislature knows how to restrict the reach of a statute when it wishes to do so).

[47] *C Ten*, 2025 Tex. Bus. 1, ¶ 28, 708 S.W.3d at 235.

expressly depend on what kind of party brings the action and/or what kind of party the action is brought against.[48] Part (b)(2) contains no such language.

¶20    Reed encourages the Court to apply what he calls the "nature of the controversy test" to determine its jurisdiction, but he does not identify any specific elements or factors for such a test.[49] He argues that application of that test would result in a lack of jurisdiction here because the six causes of action he asserts "are not actions regarding Defendants' governance, governing documents, or internal affairs."[50] Instead, he asserts that his claim for "money had and received" regards "equitable relief for money rightfully belonging to [him]," his negligence *per se* claim regards "whether Defendants violated laws intended to ensure the fairness of the Texas lottery for lottery players like [him]," and his derivative claims regard

---

[48] TEX. GOV'T CODE § 25A.004(b)(3), (4).

[49] Reply to Mot. to Remand at 3–5. Reed argues that this "nature of the controversy test" is applied to determine jurisdiction under the Uniform Declaratory Judgment Act, citing *Allstate Insurance Co. v. Irwin*, 627 S.W.3d 263, 269 (Tex. 2021), and *Texas Department of Public Safety v. Moore*, 985 S.W.2d 149, 154 (Tex. App.—Austin 1998, no pet.). But *Allstate* does not address jurisdiction and uses the phrase "nature of the controversy" only in a parenthetical quoting a case cited by another opinion cited in *Allstate*, in the context of a discussion about when a declaratory-judgment action is the proper vehicle for determining the contractual obligations in a certain kind of insurance contract. 627 S.W.3d at 269. *Moore* does address jurisdiction and uses the phrase "nature of the controversy" once, but only in connection with the determination of whether an issue arises to the level of a justiciable controversy, rather than to a hypothetical or advisory issue not properly decided by courts. 985 S.W.2d at 154.

[50] Reply to Mot. to Remand at 4.

"hold[ing] Defendants liable for the collective action of the conspirators who rigged the Lotto Texas drawing."[51]

¶21    While it is true that Reed's claims concern the matters he describes, so too do those claims concern the matters discussed above—matters covered by Section 15A.004(b)(2). A lawsuit can concern more than one thing. And here, all of these matters are interwoven into a single alleged conspiracy. "[W]hether Defendants violated laws intended to ensure the fairness of the Texas lottery"—the subject Reed attributes to his claim for negligence *per se*—includes the questions of whether Rook violated sections 466.307 and 466.308. And the "money rightfully belonging to [Reed]" that Reed references with respect to his "money had and received" is Rook TX's $95 million in proceeds from the April 2023 lottery. This is the same relief Reed seeks to recover from all defendants under all of his causes of action. Reed's effort to collect Rook TX's proceeds from its general and limited partners necessarily implicates their rights and duties as partners.[52] Similarly, Reed's conspiracy claims against these defendants raises related issues, such as whether and when a conspiracy can exist among a limited partnership, its general partner, and/or its limited partners.[53] These issues are not "tangential"; rather, they go to

---

[51] *Id.*

[52] *See* TEX. GOV'T CODE §§ 25A.001(7)(A); 25A.004(b)(2).

[53] *See* 2d Am. Pet. at 14–15.

14

fundamental issues such as whether Reed can recover the damages he seeks and from which defendants, if any, Reed can recover such damages. Thus, it is not clear to the Court that this case would not satisfy any "nature of the controversy test."

¶22 Regardless, the Court declines to superimpose any judicially crafted predominance or centrality requirements onto the statute. If the Legislature had wanted to include a predominance requirement in the statute, it could have done so.[54] It is not this Court's role to write additional requirements into the statute.[55] This does not mean that pleadings containing a tangential reference to a business's governing documents or internal affairs automatically trigger jurisdiction under Section 25A.004(b)(2). Instead, the Court must determine whether the action is "an action regarding the governance, governing documents, or internal affairs of an organization" under the plain language of the statute.

---

[54] *See, e.g.*, *Image API, LLC v. Young*, 691 S.W.3d 831, 839 (Tex. 2024) ("[I]f the Legislature had meant to limit the definition of Medicaid contractor to one who takes a lead in managing Medicaid, it would have said so expressly."); *In Interest of H.S.*, 550 S.W.3d 151, 157 (Tex. 2018) ("Had the Legislature intended to require such authority, it would have said so."); *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) ("The plain language of the statute imposes no requirement that the form of the communication be public. Had the Legislature intended to limit the Act to publicly communicated speech, it could have easily added language to that effect.").

[55] *See, e.g.*, *City of Austin v. Quinlan*, 669 S.W.3d 813, 821 (Tex. 2023) ("We may not impose our own judicial meaning on a statute by adding extra-textual words or requirements."); *Tex. Comm'n on Env't Quality v. Maverick Cnty.*, 642 S.W.3d 537, 541 (Tex. 2022) ("When a statute or rule defines its terms, courts should not construct a restated definition using alternative verbiage that adds or subtracts substantive requirements or limiting factors."); *Interest of G.X.H.*, 627 S.W.3d 288, 300 (Tex. 2021) ("There is no mention of a hearing requirement in section 263.401, and we cannot rewrite the statute to create one when the Legislature chose not to.").

**D.     The Court's jurisdiction extends to the entire action, no portion of which falls within the exclusions from the Court's jurisdiction.**

¶23     Pursuant to its independent duty to ascertain its jurisdiction, the Court now considers the scope of its jurisdiction and determines that it extends to this proceeding in its entirety.

¶24     As discussed above, Reed has pleaded facts and theories of liability that regard Rook's "governance, governing documents or internal affairs" under Section 25A.004(b)(2), and these facts and theories purport to be a basis for Reed's recovery under each of his causes of action and, through his derivative claims, against each defendant. Thus, this dispute does not present the question of whether or when the Court's jurisdiction over one cause of action or party gives it jurisdiction over other causes of action or parties in the case. But Reed does plead other *facts* that purport to be independent grounds for recovery under the same causes of action and against all defendants. For example, Reed alleges that some defendants violated Sections 466.305 of the Government Code by selling lottery tickets through credit or loan,[56] and seeks to hold all parties liable through the derivative claims.[57] A party might argue that the Court has jurisdiction over Reed's negligence *per se* claim to the extent it is based on Sections 466.307 and 466.308 but not to the extent it is based on Section 466.305.

---

[56] 2d Am. Pet. at 13; *see* TEX. GOV'T CODE § 466.305.

[57] 2d Am. Pet. at 14–16.

¶25 The Court rejects such a reading of the statute. Section 25A.004 does not compel the Court to granulate each of Reed's causes of action into every individual factual basis for liability he alleges in support of that cause. The provisions of Section 25A.004 that bestow original jurisdiction on the Court grant such jurisdiction over the "action,"[58] which refers to the lawsuit or judicial proceeding generally.[59] The Court thus construes its jurisdiction under Section 25A.004(b)(2) as extending to the entire action absent some jurisdictional limitation or exception. Several provisions of Section 25A.004 limit the Court's jurisdiction, excluding certain types of claims from the Court's jurisdiction entirely[60] and limiting the Court to supplemental jurisdiction over others.[61] None of the claims alleged in this case

---

[58] TEX. GOV'T CODE § 25A.004(b), (c), (d), (e). In addition to original jurisdiction over actions, the statute grants supplemental jurisdiction over certain "claim[s]." TEX. GOV'T CODE § 25A.004(f).

[59] *C Ten*, 2025 Tex. Bus. 1, ¶¶ 29–30, 708 S.W.3d at 236; *see also* n.21, *supra*.

[60] TEX. GOV'T CODE § 25A.004(h) (no jurisdiction over claims for healthcare liability, bodily injury or death, or legal malpractice).

[61] TEX. GOV'T CODE § 25A.004(g) (allowing only supplemental jurisdiction over actions by or against governmental entities or to foreclose on liens on real or personal property; claims arising under Estates, Family, or Insurance Codes; and certain claims relating to deceptive trade practices; covenants not to compete; mechanic's, contractor's or materialman's liens; the production or sale of farm products; consumer transactions, or the duties and obligations under an insurance policy). In its current iteration, Section 25A.004(g) excludes a type of "claim" in every instance except one, where it refers to a "civil action" by or against a governmental entity or seeking to foreclose on a lien on real or personal property. The Legislature recently passed House Bill 40, which amends Chapter 25A, including by revising this provision to say "a claim in a civil action," making the use of "claim" consistent throughout the exclusion. Tex. H.B. 40 § 45, 89th Leg., R.S. (2025) (sent to the Governor on June 2, 2025). It will become law if the Governor signs it or if the Governor takes no action by June 22, 2025.

falls within any of these statutory carveouts. The Court thus has jurisdiction over the action as a whole.

## Conclusion

¶26 The Court has jurisdiction over this action under Section 25A.004(b)(2) and denies Reed's motion to remand.

Date signed: June 18, 2025

_____
Hon. Melissa Andrews
Judge of the Texas Business Court,
Third Division