FILED IN
BUSINESS COURT OF TEXAS
BEVERLY CRUMLEY, CLERK
ENTERED
8/12/2025

2025 Tex. Bus. 31



The Business Court of Texas,
1st Division

| | | |
|---|---|---|
| FAISAL CHAUDHRY and STILLWATER OZ DEVELOPMENT FUND, LLC, individually and derivatively on behalf of SW TAYLOR STREET INVESTMENTS, LLC; SW TAYLOR STREET OWNER, LP; and SW TAYLOR STREET DEVELOPMENT, LLC, *Chaudhry* | § § § § § § § § § § | |
| v. | § | Cause No. 25-BC01B-0017 |
| STILLWATER CAPITAL INVESTMENTS, LLC; SW TAYLOR STREET MANAGER, LLC; AARON SHERMAN; ROBERT ELLIOTT; MCA 2800 TAYLOR LLC; and ORIGIN BANK, *Defendants* | § § § § § § § § § | |
| -and- | § § | |
| SW TAYLOR STREET INVESTMENTS, LLC; SW TAYLOR STREET OWNER, LP, and SW TAYLOR STREET DEVELOPMENT, LLC, *Nominal Defendants* | § § § § § § | |

====
**OPINION**
====

### *Syllabus*[*]

*This case concerns whether (i) a party must file a separate removal notice, consent to removal, or join in another party's notice to argue that the case is removed as to it; (ii) claims alleging common law and statutory fraud inducing a member to enter an LLC company agreement are actions "regarding" the company's "internal affairs" or "governing documents"; (iii) the case-wide amount in controversy requirement encompasses counterclaims; and (iv) this court recognizes non-statutory grounds for declining to exercise original subject matter jurisdiction.*

## I. Opinion

[¶ 1] This case arises from an apartment project in Dallas, Texas. The plaintiffs invested in a holding company intended to own and control other entities regarding the property.

[¶ 2] Plaintiffs pled four counts. Counts one and two are derivative causes of action asserting fiduciary breach and knowing participation causes of action. Counts three and four allege that three defendants committed common law and statutory real estate fraud in the fraudulent inducement of LLC company agreements.

---

* This syllabus is provided for the reader's convenience; it is not part of the court's opinion; and it is not legal authority.

[¶ 3] A defendant named in only the knowing participation count filed a removal notice. No other defendant did so. A different defendant filed a contract breach counterclaim arising out of the same case or controversy as the plaintiffs' causes of action.

[¶ 4] Plaintiffs filed two motions asking the court to (i) remand the case, including the counterclaim, or (ii) remand or transfer parts of the case to the district court and abate the remainder pending the district court result.

[¶ 5] The court heard oral argument on and denied the first motion because (i) the Government Code does not require other defendants to file separate removal notices or to formally join in or consent to a removal notice to benefit from the removal and (ii) the court has independent original jurisdiction over plaintiffs' fraud causes of action.

[¶ 6] The court denied the second motion without argument because § 25A.004(b)'s amount in controversy requirement applies to the case as a whole, including counterclaims.

## II. The Record

[¶ 7] The court considered plaintiffs' original and first amended petitions, Origin Bank's removal notice, the parties' motions, responses, replies, and related submissions and arguments.

## III. The Facts

[¶ 8] The court derives these facts from pleadings unless indicated otherwise.[1]

### A. The Project and Parties

[¶ 9] The "Project" is a 192-unit apartment complex on Taylor Street in Dallas's Deep Ellum area.[2]

[¶ 10] SW Taylor Street Development, LLC (Development) was formed to own the property.[3]

[¶ 11] SW Taylor Street Investments LLC (Investments) was Development's sole equity owner.[4]

[¶ 12] Defendant Stillwater Capital Investments LLC (Capital) was an initial Investments investor.[5] (The court refers to this entity as "Capital," instead of as "Stillwater" that Chaudhry used in his pleadings to avoid confusion with the other entities with "Stillwater" in their names.)

---

[1] Origin Bank's removal notice relied on plaintiffs' original petition to invoke this court's subject matter jurisdiction. Plaintiffs' first amended petition (FAP) does not include changes material to this opinion.

[2] Plaintiffs' Original Petition (POP) ¶ 16.

[3] POP ¶ 20.

[4] POP ¶ 20.

[5] *See* POP ¶s 4, 16, 20.

[¶ 13] Capital created SW Taylor Street Manager, LLC (Manager) to be the sole manager for Development.[6,7]

[¶ 14] Plaintiff Faisal Chaudhry invested in Investments.[8]

[¶ 15] Chaudry later created and owns Stillwater OZ Development Fund, LLC (OZ), which also invested in Investments.[9]

[¶ 16] Defendants Aaron Sherman and Robert Elliott are Capital members and managers.[10]

[¶ 17] SW Taylor Street Owner, LP (Owner) was later formed as another holding company between Investments and Development.[11]

[¶ 18] Defendant Origin Bank provided a $46,545,000 construction loan for the Project.[12]

---

[6] POP ¶ 20.

[7] Plaintiffs stated in their pleadings that Manager was also the manager of Investments, as well as Development. However, Defendant Capital was manager of Investments, not Manager. *See* Exhibit C to Origin Bank's Response to Plaintiffs' Motion to Remand.

[8] POP ¶s 2, 20.

[9] POP ¶ 24.

[10] Stillwater Capital Investments, LLC, SW Taylor Street Manager, LLC, Aaron Sherman and Robert Elliott's Response to Motion to Remand 12, n.6 (Sherman and Elliott are [Capital] members and managers); *see* POP ¶ 50 ("Defendants [Capital, Sherman, and Elliott] were fiduciaries, either directly or indirectly, of Investments[.]"). Plaintiffs did not dispute that Sherman and Elliott are Capital members and managers. Chaudhry calls Elliott and Sherman Capital's "principals." POP ¶s 22(a), 30.

[11] POP ¶ 22(b).

[12] POP ¶ 22(a).

[¶ 19] Defendant MCA 2800 Taylor LLC (MCA) bought a $7.5 million participation in Origin's loan.[13]

## B. Chaudhry's Investment

[¶ 20] In 2020, Capital solicited Chaudhry to invest in the Project.[14] The initial pitch was that Chaudhry would invest $8 million in Investments with certain expected returns.[15] That offer was based on budget and pro forma projections that assumed total development costs of approximately $58 million, with most of those costs covered by a $48 million HUD construction loan.[16] Chaudhry paid $3 million toward his total capital contribution.[17]

## C. The deal changes.

[¶ 21] By 2022, the deal started to change due to increased construction costs and financing rates.[18] For example, Capital replaced HUD financing with a commercial loan from Origin with an interest rate higher than the proposed HUD loan's rates.[19]

---

[13] POP ¶ 29(a).
[14] POP ¶ 16.
[15] POP ¶ 18.
[16] POP ¶ 19
[17] POP ¶ 20.
[18] POP ¶ 21.
[19] POP ¶ 22(a).

[¶ 22] At about the same time, Capital reached a deal with another investor, "Mount Auburn," to provide additional equity.[20] But instead of having that investor join Development as a member, Capital created Owner—another holding company between Investments and Development—to assume ownership over Development's membership interests.[21] Owner's two limited partners were Investments and a new entity named "The Taylor Investor LP" (Taylor Investor), which held Mount Auburn's interests.[22] This structure entirely subordinated Chaudry's equity interest in the Project in favor of Capital and Mount Auburn.[23]

[¶ 23] Chaudhry and Capital agreed to increase their capital contribution to $9.5 million and roughly $1.241 million, respectively.[24]

[¶ 24] However, Capital did not fully fund its commitments.[25]

---

[20] POP ¶ 22(b).
[21] POP ¶ 22(b).
[22] POP ¶ 22(b).
[23] POP ¶ 22(b).
[24] POP ¶ 22(c).
[25] POP ¶ 27(c).

[¶ 25] Taylor Investor, on its owner's behalf, invested at least $17 million in exchange for a preferential return.[26]  Neither Taylor Investor nor its owner "Mount Auburn" are parties to this case.

[¶ 26] This diagram illustrates the parties' relationships:



## D. The Project incurs more debt and equity investments.

[¶ 27] By February 2023, Capital was projecting total Project costs of nearly $72 million.[27]

---

[26] POP ¶ 27(a).
[27] POP ¶ 25.

-8-

[¶ 28] Chaudhry and Capital restructured Investments' company agreement to reflect additional equity contributions that occurred in April 2023 (although the restructured agreement was dated to be effective in June of 2022).[28]

[¶ 29] Before signing that amended agreement, Chaudhry assigned a portion of his Development membership interest to OZ.[29]  After that assignment, Chaudhry and OZ owned 28.47% and 21.53% of Investments, respectively.[30]  (This opinion refers to Chaudhry and OZ collectively as Chaudhry unless the context indicates otherwise.)

[¶ 30] As time passed, the Project suffered a series of financial setbacks that required further loans and further Chaudhry equity investments to protect his existing investments.[31]  Consequently, his equity became behind substantially more debt or preferred returns than originally projected.[32]

[¶ 31] Additionally, at one point, Chaudry was required to agree to cover any additional shortfalls.[33]

---

[28] POP ¶ 24.
[29] POP ¶ 24.
[30] POP ¶ 24.
[31] POP ¶s 21–22, 30–31.
[32] *See* POP ¶ 33.
[33] POP ¶ 23.

[¶ 32] The Project is not fully leased, rent rates are below projections, and it is, according to Chaudhry, impossible for the Project to ever experience positive cash flows with its current capital structure.[34]

**E. Chaudhry's Causes of Action**

[¶ 33] On April 23, 2025, Chaudhry sued in the 68th District Court of Dallas County, Texas. His petition named Investments, Owner, and Development as nominal defendants and refers to them as the Companies.[35] It asserted affirmative causes of action against Elliott, Sherman, Capital, Manager, MCA, and Origin.

[¶ 34] That petition asserted four causes of action:

[¶ a] Count One: Chaudhry asserted derivative fiduciary breach causes of action on the Companies' behalf and against Capital and Manager as a member, manager, or general partner of the Companies. Chaudhry alleged that Capital and Manager breached duties of obedience, loyalty, and care in nine different ways.[36]

---

[34] POP ¶s 32–33.
[35] POP ¶ 35.
[36] POP ¶s 38–42; FAP ¶s 38–42.

[¶ b]  Count Two: Chaudhry asserted derivative causes of action against Sherman, Elliott, MCA, and Origin alleging that those defendants knowingly participated in the fiduciary breaches pled in count one.[37]

[¶ c]  Count Three:  Chaudhry asserted that Capital, Sherman, and Elliott (Capital Defendants) made multiple misrepresentations that fraudulently induced Chaudry to (i) sign Investments' company agreement, (ii) sign Investments' amended company agreement, and (iii) not object to Investments and its affiliates entering into other written contracts with Mount Auburn, Origin, and MCA.[38]

[¶ d]  Count Four:  Chaudhry  asserted  that  the  Capital Defendants committed statutory real estate fraud in the same manner in which they allegedly committed common law fraud in count three—resulting in Chaudhry (i) making the investment, (ii) agreeing to increase the investment, (iii) agreeing to restructure the Project (including the transfer of 100% of the membership interest in Development to Owner), and (iv) to otherwise not pull out of the deal.[39]

---

[37] POP ¶s 43–46; FAP ¶s 43–48.
[38] POP ¶s 47–51; FAP ¶ 49–53.
[39] POP ¶s 52–56; FAP ¶s 54–58.

[¶ 35] Chaudhry also sought to recover exemplary damages and attorneys' fees.[40]

[¶ 36] Chaudhry's FAP adds more details but asserts the same four causes of action against the same sets of defendants.

## F. Origin's Removal Notice

[¶ 37] Before any other defendant appeared in the case—Origin filed its removal notice, invoking this court's jurisdiction pursuant to Government Code Chapter 25A. Specifically, Origin asserted that this court has jurisdiction pursuant to *§ 25A.004(b)* because the amount in controversy exceeds $5 million and involves:

[¶ a] A derivative proceeding;

[¶ b] An action regarding the governance, governing documents, or internal affairs of a private organization;

[¶ c] An action in which a claim under a state or federal securities or trade regulation law is asserted against an organization or its manager in the manager's official capacity;

---

[40] POP ¶s 57–58; FAP ¶s 59–60.

[¶ d] An action by an organization's owner if the action (i) is brought against an owner, controlling person, or managerial official of the organization; and (ii) alleges an act or omission by the person in the person's capacity as an owner, controlling person, or managerial official of the organization;

[¶ e] An action alleging that an owner, controlling person, or managerial official breached a duty owed to an organization, including the breach of a duty of good faith; or

[¶ f] an action arising out of the Business Organizations Code.[41]

[¶ 38] No other defendant filed a removal notice, a consent to Origin's removal, or a joinder in Origin's removal notice.

## G. Investments' Counterclaim

[¶ 39] Investments filed a counterclaim alleging that Chaudhry breached the parties' Amended Company Agreement by failing to provide required additional capital.[42]

---

[41] Origin Removal Notice ¶s 6–7.

[42] Defendant SW Taylor Street Investments, LLC's Answer to First Amended Petition and Counterclaims.

## H. Chaudhry's Subject Matter Jurisdiction Motions

### 1. Chaudhry's Motion to Remand, or, Alternatively, to Abate (First Motion)

[¶ 40] Chaudhry's First Motion did not contest jurisdiction over counts one and two as derivative claims. *See* TEX. GOV'T CODE § 25A.004(b)(1). But he moved to remand counts three and four for lack of the court's original subject matter jurisdiction for several reasons and objected to the exercise of supplemental jurisdiction.[43] For example, he argued the court lacks jurisdiction over counts three and four because the court lacks jurisdiction over "qualified transactions" involving bank loans like the Origin loan.[44] Next, he asked the court to adopt federal abstention principles and to abate counts one and two while remanded counts three and four proceed in district court.[45] Finally, he asked the court to either remand, transfer, or abate counts one and two based on the dominant jurisdiction doctrine.[46]

[¶ 41] All defendants opposed that motion arguing that independent jurisdiction grounds support original jurisdiction over counts three and four

---

[43] First Motion 2–6, 12.
[44] First Motion 4–6.
[45] First Motion 7–11.
[46] First Motion 11–12.

based on Government Code §25A.004(b),[47] which concerns an entity's internal, entity-owner affairs (as opposed to § 25A.004(d), which concerns "qualified transactions" or other external-based causes of action).[48] The Capital Defendants expressly joined in Origin's response.[49]

[¶ 42] As to Origin's response, Chaudhry replied that (i) Origin lacks standing to argue that the court has original jurisdiction over counts three and four because it is not a named defendant in those counts;[50] (ii) the district court is the only court that indisputably has jurisdiction over the entire case;[51] (iii) Origin did not address abstention factors;[52] and (iv) independent, original jurisdiction does not otherwise apply to counts three and four.[53]

---

[47] Capital Defendants additionally argued that the court has jurisdiction over count four based on § 25A.004(d)(3). Capital Defendants' Resp. 10–12. However, because the Notice of Removal did not plead § 25A.004(d) as a basis for jurisdiction or that the amount in controversy satisfies the requirement for that subsection, the court has no basis to rest its jurisdiction in § 25A.004(d)(3).

[48] *See* (i) Stillwater Investments, LLC, SW Taylor Street Manager, LLC, Aaron Sherman, and Robert Elliott's Response to Plaintiffs' Motion to Remand (Capital Defendants' Resp.) 9–10; (ii) Defendant MCA 2800 Taylor LLC's Response to Plaintiffs' Motion to Remand (MCA's Resp.) 8, n.7; and (iii) Origin Bank's Response to Plaintiffs' Motion to Remand (Origin's Resp.) 3–7.

[49] Capital Defendants' Resp. 15.

[50] Chaudhry's Reply 4–5, 8.

[51] Chaudhry's Reply 5.

[52] Chaudhry's Reply 5.

[53] Chaudhry's Reply 6–8.

[¶ 43] Next, Chaudhry urged for the first time that the Capital Defendants and MCA waived and lack standing to support removal by not filing separate removal notices, joining in Origin's notice, or filing a consent to removal as might be required in federal practice.[54] He further argued that for several reasons the court lacks independent, original jurisdiction over counts three and four.[55]

[¶ 44] Chaudhry also argued that those counts are excluded from jurisdiction because they involve a bank loan.[56]

[¶ 45] Finally, he conceded that (i) federalism principles underlying abstention doctrines are inapplicable and (ii) the legislature did not provide a specific remedy to avoid wasteful parallel proceedings that can arise where a plaintiff in a removed proceeding does not agree to supplemental jurisdiction.[57] Nonetheless, he asked the court to fashion a comity-based first-to-file rule for abating the non-remanded causes of action.[58]

---

[54] Chaudhry's Reply 8–9, 12–13.
[55] Chaudhry's Reply 9–12.
[56] Chaudhry's Reply 12–13.
[57] Chaudhry's Reply 13–14.
[58] Chaudhry's Reply 14.

[¶ 46] The court heard oral argument on that motion and later denied it.[59]

## 2. Chaudhry's Motion to Transfer or Dismiss (Second Motion)

[¶ 46] Chaudhry's Second Motion argued that the court lacks original jurisdiction over Investments' counterclaim because Investments pled $1,638,639.35 in damages do not reach the business court's statutory minimum requirements under §§ 25A.004(b) or (d).[60] He further asserted that jurisdiction is lacking because the parties have not agreed to business court jurisdiction.[61]

[¶ 47] The court denied that motion.

## IV. Analysis

## A. Standard of Review

[¶ 48] Resolving Chaudhry's motions required the court to construe and apply portions of Government Code Chapter 25A regarding the court's subject matter jurisdiction, principally §§ 25A.001(3), (5) and (7) and § 25A.004(b), (d), and (f). Thus, resolving those motions involved statutory construction

---

[59] Order dated June 30, 2025.
[60] Second Motion 5–8.
[61] Second Motion 8–9.

issues, which are legal questions. *In re Panchakarla*, 602 S.W.3d 536, 540 (Tex. 2020) (orig. proceeding).

[¶ 49] The applicable principles are:

> When a statute's language is unambiguous, "we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results." "We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." We construe statutes and related provisions as a whole, not in isolation, . . . and as a general proposition, we are hesitant to conclude that a trial court's jurisdiction is curtailed absent manifestation of legislative intent to that effect . . .

*Id.* (citations omitted).

## B. Original and Supplemental Jurisdiction

[¶ 50] Business court original subject matter jurisdiction has two broad categories: (i) § 25A.004(b) generally internal, entity and owner-type, disputes (seven categories generally related to derivative, breach of fiduciary duty, governance and control, Business Organizations Code, and securities or trade regulation causes of action) and (ii) § 25A.004(d) generally external disputes (involving "qualified transactions," parties' agreements to business court jurisdiction, and certain Finance Code or Business and Commerce Code disputes).

[¶ 51] Further, like federal courts' supplemental jurisdiction to a federal question cause of action (28 USC § 1367(a)), the business court has supplemental jurisdiction over most related causes of action that relate to the "same case or controversy" as a cause of action under § 25A.004(b) and (d). Gov't Code § 25A.004(f); *but see* § 25A.004(h).

[¶ 52] But business court supplemental jurisdiction differs from its federal analog in at least two ways:

[¶ a]  First, unlike federal practice, the Government Code allows parties to veto the court's exercise of supplemental jurisdiction over causes of action not within the court's original jurisdiction.  *Compare* Gov't Code § 25.004(f) (supplemental jurisdiction subject to agreement by all parties to the cause of action) *with* 28 USC § 1367(a) (no party agreement requirement).

[¶ b] Second, the Government Code gives the court broad discretion to decline its supplemental jurisdiction by providing that the court must also agree to exercise its supplemental jurisdiction without specific statutory guidelines concerning the proper exercise of that discretion, whereas the federal statute lists four scenarios where a district court may decline to exercise its supplemental jurisdiction:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2 ) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Compare* GOV'T CODE § 25A.004(f); *with* 28 USC § 1367(c).

[¶ 53] Moreover, supplemental jurisdiction is relevant only if the court does not otherwise have original jurisdiction over a related cause of action. *See* GOV'T CODE § 25A.004(f).

[¶ 54] However, § 25A.004(g) identifies certain categories of causes of action over which the court has supplemental jurisdiction only if they (i) relate to the same case or controversy of another cause of action within the court's original jurisdiction and (ii) the parties and court consent. *See* GOV'T CODE § 25.004(g).

[¶ 55] Further, § 25A.004(h) lists three cause of action categories (personal injury, medical malpractice, and legal practice) that are always excluded from business court jurisdiction. GOV'T CODE § 25A.004(h).

[¶ 56] So, except § 25A.004(g)'s "supplemental only" categories, if a cause of action fits one of § 25A.004's original jurisdiction categories, whether the court has supplemental jurisdiction over that cause of action is not an issue.

[¶ 57] But none of the §§ 25A.004(g) or (h) potential restrictions or exclusions apply to any cause of action here.

## C. Removal of an Entire Action

[¶ 58] Chaudhry's reply argued that Origin lacks standing to contest remand as to counts three and four because Origin is not a party to those counts.[62]  Assuming that argument is properly before this court, the court rejects it because a removal notice removes the entire action.  GOV'T CODE § 25A.006(d) (A party to an action may remove the "action."); *Osmose Utilities Servs., Inc. v. Navarro Cty. Electric Cooperative*, 2025 Tex. Bus. 3, ¶ 27 (1st Div.), 707 S.W.3d 117, 123 (2025) ("Lawsuit" is the only reasonable Ch. 25A meaning of "action.").  Thus, a party's timely removal notice removes the entire lawsuit in the first instance even if a discrete cause of action is not within the court's jurisdiction and may be later severed and

---

[62] Chaudhry's Reply 4–5.

remanded. *See* Gov't Code §§ 25A.004(f)–(h) (contemplating that the court may have jurisdiction over an action but not every claim asserted in the action); *see also C Ten 31 LLC ex. rel. SummerMoon Holdings LLC v. Tarbox*, 2025 Tex. Bus. 1, ¶ 31, 708 S.W.3d 223, 236–37 (3rd Div.); *Osmose*, 2025 Tex. Bus. 3, ¶s 25–27; *Sebastian v. Durant*, 2025 Tex. Bus. 4, ¶s 18–19, 21, 707 S.W.3d 124, 127–28 (11th Div.).

[¶ 59] So, Origin's removal notice removed the entire lawsuit, including counts three and four, subject to the court remanding, dismissing, or transferring any discrete causes of action not properly before it.

## D. Removal and Non-Joining Parties

[¶ 60] Next, Chaudhry urged that the non-Origin defendants waived an ability to support removal jurisdiction regarding them because they did not file their own removal notice, join in Origin's notice, or affirmatively consent to that removal.[63]  Again assuming that argument is properly before this court, the court rejects it because no part of Government Code Ch. 25A requires a party to do any of those things to defend removal as to it based on another party's removal notice.

---

[63] Chaudhry's Reply 8–9.

[¶ 61] Similalry, Chaudhry's reliance on Rule of Civil Procedure 355 is misplaced because it does not require a party to file its own removal notice, join in another notice, or consent to removal.  *See* TEX. R. CIV. P. 355.

[¶ 62] Thus, the court rejects Chaudhry's "waiver"-based arguments.

## E. Chaudhry's *§ 25A.004(d)* Arguments

[¶ 63] Although the removal notice did not mention § 25A.004(d), Chaudhry's First Motion urged that § 25A.004(d) does not support the court's jurisdiction over counts three and four because (i) those counts involve the Origin bank loan, (ii) the parties did not agree to business court jurisdiction, (iii) count three (common law fraud in the inducement) does not arise from the Finance or Business and Commerce Codes, and (iv) count four is not alleged *by* an organization or an officer or governing person acting on behalf of an organization.[64]

[¶ 64] The short answer to those arguments is that Origin's removal notice did not assert those grounds to support the court's jurisdiction.

---

[64] First Motion 5–6.

**F. Counts Three and Four and Investments' Counterclaim**

### 1. Introduction

[¶ 65] All parties analyzed the jurisdictional issues on a per-cause-of-action basis. This opinion does so too and concludes that counts three and four and Investments' counterclaim are within the court's original jurisdiction.[65] So, whether Chaudhry consents to supplemental jurisdiction over them is irrelevant. Further, the legislature did not authorize this court to decline its *original* jurisdiction over those causes of action.

### 2. Count Three—Common Law Fraud

#### a. Introduction

[¶ 66] Count three asserts that the Capital Defendants committed common law fraud by making false statements and omissions that induced Chaudhry into signing Investments' original and amended company agreements and other contracts:

---

[65] Some parties have suggested that the court's *Reed v. Rook* opinion might be construed to say that the court's original jurisdiction over one cause of action gives it original jurisdiction over all causes of action unless the Government Code expressly limits that jurisdiction under §§ 25A.004(g) or (h). *See* 2025 Tex. Bus. 23, ¶ 25, --- S.W.3d --- (3rd Div.). The present opinion need not address that premise because Chaudry's pleadings establish the court's original jurisdiction over counts three and four. Regardless, this opinion agrees that § 25A.004 "does not compel the Court to granulate each of [Chaudhry's] causes of action into every individual factual basis for liability he alleges for that cause." 2025 Tex. Bus. 23, ¶ 25. Nonetheless, the granular allegations in these counts support original jurisdiction.

[Defendants'] misrepresentations and omissions caused Chaudry to sign the company agreement for Investment[s], the amended company agreement for Investment[s], and not object to Investment[s] and its affiliates entering into other written contracts with Mount Auburn, Origin Bank, and MCA.[66]

The issue is whether the court has original jurisdiction over that count under (i) § 25A.004(b)(2) as an action regarding the governance, governing documents, or internal affairs of an organization or (ii) § 25A.004(b)(4) as an action by an LLC member against a controlling person for an act in that capacity.[67]

[¶ 67] The court concludes that both sections support original jurisdiction over count three for these reasons:

## b. § 25A.004(b)(2)

[¶ 68] Chaudhry's § 25A.004(b)(2) arguments focused on whether count three is a cause of action regarding Investments' governing documents while ignoring whether that count alleges fraud regarding Investments' membership or ownership (that is, its "internal affairs").[68] "Regarding's"

---

[66] POP ¶ 51, *see* First Motion 3. Although the original company agreement is not in the record, the amended company agreement is Exhibit C to Origin's Response Origin Response 41–70.

[67] *Compare* First Motion 4, Chaudhry Reply 9-11 *with* Stillwater Defs' Resp. 9-10 and Origin Resp. 3-7.

[68] *See* Chaudhry's Reply 9–11.

meaning in this context defines the outcome. Here, count three satisfies both § 25A.004(b)(2) prongs because it alleges fraud "regarding" Investments' internal affairs and its governing documents.

### i. "Regarding" Defined

[¶ 69] The word "regarding" in § 25A.004(b)(2) modifies both "internal affairs" and "governing documents." Chapter 25A does not define "regarding," so the court refers to its common understanding. *Reed v. Rook*, 2025 Tex. Bus. 23, ¶ 10, --- S.W.3d --- (3rd Div.).

[¶ 70] "Regarding" is a preposition that means "with regard to; respecting; concerning." regarding, Dictionary.com (last visited July 29, 2025). Its synonyms include: "about," "as to," "in relation to," and "with respect to." regarding, Thesaurus.com (last visited July 29, 2025).

### ii. Regarding Investments' "Internal Affairs"

[¶ 71] Chaudhry pled that the Capital Defendants (meaning all three of them) fraudulently induced him into signing Investments' company agreement, thereby becoming an Investments member,[69] and its amended company agreement.[70] He did not deny that those agreements relate to

---

[69] POP ¶s 20, 51; FAP ¶s 20, 53.

[70] POP ¶s 13–16; FAP ¶s 15–17; *see* Origin's Resp. 47–70 (amended company agreement).

Investments' membership or ownership interests (which they do on their face).[71] Indeed, he pled that:

> Chaudhry eventually agreed to the deal and paid $3 million toward his total capital contribution. He thereafter became a member of SW Taylor Street Investments, LLC, which, in turn owned the property.[72]

And

> [Defendants'] misrepresentations and omissions caused Chaudry to sign the company agreement for Investment[s], the amended company agreement for Investment[s], and not object to Investment[s] and its affiliates entering into other written contracts with Mount Auburn, Origin Bank, and MCA.[73]

Also

> The above false representations and promises was [sic] made for the purpose of inducing Chaudry to agree to and then to increase his investment[s] in the Project, agreeing to restructure the Project, and to otherwise not pull out of the deal.[74]

[¶ 72] Further, he argued that the Capital Defendants' alleged fraud caused him to not object to other agreements that substantially undermined his investments.[75]

---

[71] *See* First Motion 2–6; Chaudhry's Reply 9–11; Origin's Resp. 47–70.

[72] POP ¶ 20, FAP ¶ 20.

[73] POP ¶51, FAP ¶ 53, *see* First Motion 3.

[74] POP ¶ 56, FAP ¶ 58. Although Chaudhry pled these statements in count four, they concern the same alleged fraudulent statements and omissions pled in count three. *Compare* POP ¶ 49 *with* POP ¶ 55, and FAP ¶ 51 *with* FAP ¶ 57.

[75] First Motion 3, *citing* POP 14–16.

[¶ 73] In short, he pled that all Capital Defendants committed fraud regarding his membership or ownership interests in Investments, that is, its internal affairs.

### iii. Regarding "Governing Documents"

[¶ 74] Nor did Chaudry deny that the company agreements are "governing documents," which include: (D) *a company agreement or operating agreement; . . .* and (G) an agreement among owners restricting the transfer of ownership interests. GOV'T CODE § 25A.001(3) (emphasis added). Investments' company agreements do both.[76] And, as discussed in ¶s 66, 71, Chaudhry alleged that the Capital Defendants' misrepresentations and omissions caused him to sign the company agreement and the amended company agreement for Investments.[77]

[¶ 75] So, based on § 25A.004(b)(2)'s plain language Chaudhry pled a cause of action regarding "governing documents."[78] *See Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015).

---

[76] Origin Resp. 47–70. Absent contrary evidence, it is reasonable to infer that the original company agreement is not materially different than the amended company agreement as concerns this jurisdictional analysis.

[77] POP ¶ 51; FAP ¶ 53.

[78] Chaudhry pled that fraudulent inducement arises only in the context of a contract and the existence of a contract is an essential part of its proof. POP ¶ 48, FAP ¶ 50. LLC

### iv. Chaudhry's Untimely Counterarguments

[¶ 76] Chaudhry's First Motion did not explain how pleading that the Capital Defendants fraudulently caused him to sign two company agreements are not allegations regarding Investments' "internal affairs" or "governing documents."[79]  Instead, he summarily stated that counts three and four were not encompassed by § 25A.004(b).[80]

[¶ 77] The Capital Defendants responded that § 25A.004(b)(2) applies because Chaudhry alleges that they induced him to sign two company agreements—which are claims regarding the company's governance, governing documents, or internal affairs.[81]

[¶ 78] Citing *Paxton*, Chaudhry's reply argued for the first time that the *noscitur a sociis* canon precludes applying § 25A.004(b)(2) to count three because the statute "grants jurisdiction over disputes between owners and governing persons concerning the operation and administration of an entity,

---

operating/company agreements are contracts.  *See L Series, L.L.C. v. Holt*, 571 S.W.3d 864, 870–71 (Tex. App.—Fort Worth 2019, pet denied) (contract principles applied to company regulations).

[79] *See* First Motion 2–6.

[80] First Motion 3–4.

[81] Capital Defendants' Resp. 9–10.

and not direct claims by one person against another claiming to have been tricked into making an investment."[82]

[¶ 79] That canon, which means that words are known by their associates, "holds that the meaning of a word or phrase, especially one in a list, should be known by the words immediately surrounding it." 468 S.W.3d at 61. The supreme court uses the canon, when appropriate, "to avoid ascribing to one word a meaning so broad that it is incommensurate with the statutory context." *Id.*; *see* Sacalia and Garner, READING LAW 195–98 (2012). However, the supreme court gives statutorily defined terms their statutory meaning. 468 S.W.3d at 58, 61. And nothing in *Paxton* or the common understanding of *noscitur a sociis* requires a court to ignore words' plain meaning, their statutorily defined meanings, or common sense. *See id.* 58–62.

[¶ 80] Assuming Chaudhry's argument is properly before the court, the court rejects it. Although § 25A.004(b) includes owner-versus-governing person disputes regarding their entity's operation and administration, nothing in that statute's plain text nor applying the *noscitur a sociis* canon here excludes claims that a person fraudulently induced the claimant into signing

---

[82] Chaudhry's Reply 9–10.

governing documents or becoming an owner. Rather, as discussed in ¶s 65–75 above, his common law fraud claims fall under § 25A.004(b)(2)'s plain language.

### c.  § 25A.004(b)(4)

[¶ 81] Government Code § 25A.004(b)(4) grants the court jurisdiction over:

> [A]n action by an organization, or an owner of an organization, if the action: (A) is brought against an owner, controlling person, or managerial official of the organization; and (B) alleges an act or omission by the person in the person's capacity as an owner, controlling person, or managerial official of the organization[.]

[¶ 82] Chaudhry acknowledged that Origin's removal notice invoked the court's jurisdiction under that section, yet he offered no argument against its application other than to say count three was not an "action[] by an organization."[83] Origin's response, which the Capital Defendants adopted,[84] detailed that statute's application to counts three and four.[85]

[¶ 83] Chaudhry replied that § 25A.004(b)(4) does not apply because:

---

[83] *See* First Motion 3.

[84] Capital Defendants' Resp. 15.

[85] Origin Resp. 3–7.

[¶ a] Sherman and Elliott allegedly are not "'owner[s], controlling person[s], or managerial officials'" of Investments[;]"

[¶ b] counts three and four do not allege acts or omissions against Capital in its capacity as Investments' owner/controlling person.[86]

[¶ 84] The court rejects those arguments because (i) Capital is an Investments "controlling person" as its sole manager; (ii) Sherman and Elliott are "controlling persons" of Capital and, thus indirectly of Investments; and (iii) Chaudry alleged that all three defendants committed fraud while acting in those capacities.

[¶ 85] To begin, a "controlling person" is "a person who directly *or indirectly* controls a governing person, officer, or organization." GOV'T CODE § 25A.001(1) (emphasis added). Capital is an Investments controlling person because it is Investments' sole manager,[87] and as an LLC Investment is an "organization."[88] GOV'T CODE § 25A.001(10)(E). Further, Capital owns a

---

[86] Chaudhry Reply 6–7.

[87] Origin Resp. 47, 49.

[88] Capital is a "person" because the Government Code provides that a "Person includes a corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." GOV'T CODE, § 311.005(2). Moreover, Investments' company agreement states that a " 'Person' means an individual or a corporation, partnership, trust, estate, unincorporated organization, association, or other entity." Origin Resp. 49 (emphasis original). As an LLC, Investments is an "other entity."

50% membership interest in Investments.[89]  And Chaudhry alleged that Capital owes fiduciary duties to the Companies as "either a member, manager, or general partner of those entities.[90]  Next, he frequently alleged that Capital conducted Investments' affairs.[91]

[¶ 86] Regarding Sherman and Elliott, Chaudhry alleged that they are Capital's principals and conducted all of its complained about conduct.[92]  So, according to Chaudhry, Sherman and Elliott directly control Capital and thus indirectly control Investments.

[¶ 87] Consequently, Chaudhry, as an Investments "owner," asserts claims against all three Capital Defendants as "controlling persons" of an "organization," meaning Investments.  Accordingly, the court has original jurisdiction under § 25A.004(b)(4).

### 3. Count Four—Statutory Fraud in a Real Estate Transaction

[¶ 88] Count four is essentially the same as count three except it asserts that the Capital Defendants' alleged fraud constitutes statutory fraud in a real

---

[89] Origin Resp. 61.

[90] POP ¶ 39, 46; FAP ¶ 39, 46.

[91] *See* POP ¶s 16, 18–20, 22, 24-25, 27(d), 30, 40-42, 49-51, 55; FAP ¶s 16, 18–20, 22, 24–25, 27(d), 30, 40–42, 51–53, 57.

[92] POP ¶s 22(a), 30, 49(a), 55(a); FAP ¶s 22(a), 30, 51(a), 57(a).

estate transaction in violation of Business and Commerce Code § 27.01.[93] Indeed, count four expressly incorporates count three.[94]  Thus, the court has original jurisdiction over count four for the same reasons as count three.

[¶ 89] Additionally, the Business and Commerce Code § 27.01 is a trade regulation law and Capital Defendants are (i) an organization and/or (ii) a controlling person or managerial official of an organization acting in their capacity as a controlling person or managerial official.  So, the court also has original jurisdiction under Government Code § 25A.004(b)(3), which was another ground stated in the removal notice.[95]

### 4. Investments' Counterclaim

[¶ 90] Chaudry's Second Motion asked the court to dismiss Investments' counterclaim because Investments' potential damages do not reach the $5 million threshold needed to support jurisdiction under § 25A.004(b).[96]

[¶ 91] The court rejects his argument because the court has jurisdiction over this action—meaning entire lawsuit—if the claims in the suit,

---

[93] *Compare* POP ¶s 47–51 *with* ¶s 52–56; FAP ¶s 49–53 *with* ¶s 54–58.
[94] POP ¶ 52; FAP ¶ 54.
[95] Removal Notice 3, ¶ 7(3).
[96] Second Motion *passim*.

collectively, put more than $5 million in controversy, *C Ten*, 2025 Tex. Bus. 1, ¶ 30, and Investments' counterclaims are part of this lawsuit, *Yadav v. Agrawal*, Tex. Bus. 2025, ¶ 41, 708 S.W.3d 246, 258 (3rd Div.). Accordingly, because Origin's removal notice plead that the amount in controversy was over $5 million for this action, § 25A.004(b)'s amount in controversy is met for Investments' counterclaims.[97]

## G. Dominant Jurisdiction and Comity

[¶ 92] Asserting comity and dominant jurisdiction, Chaudhry asked the court to abate this case for some or all of its causes of action to proceed in the district court.[98] Since Chaudry exercised its veto over the court's supplemental jurisdiction over all causes of action not in the court's original jurisdiction, of which there are none, his arguments addressed only causes of action in the court's original jurisdiction.

[¶ 93] The court declines Chaudhry's request because the Legislature granted the court no express authority to decline its original subject matter jurisdiction. *See* GOV'T CODE Ch. 25A. That is, although the Government Code gives the court broad discretion to decline is supplemental jurisdiction

---

[97] Removal Notice ¶ 4.
[98] First Motion 11–12; Chaudhry Reply 13–14.

over causes of action related to claims within its original jurisdiction (GOV'T CODE § 25A.004(g)), it granted no such authority regarding causes of action within in its original jurisdiction. Thus, the Legislature impliedly denied the court that power. *See City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011) (the *expressio unius est exclusio alterius* canon presumes that the purposeful inclusion of specific terms implies the purposeful exclusion of terms that do not appear); Scalia and Garner, READING LAW 107 (2012).

[¶ 94] Next, the Government Code contemplates that the court will continue to exercise jurisdiction over claims in its original jurisdiction even if other related claims are remanded to a different court of original jurisdiction. GOV'T CODE § 25A.004(f).

[¶ 95] Finally, it is the Legislature's, not this court's, job to decide whether to write new laws granting the court power to decline to exercise its original jurisdiction.

[¶ 96] Accordingly, this court declines to abate this case.

BILL WHITEHILL
Judge of the Texas Business Court,
First Division

SIGNED: August 12, 2025

-36-

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 104260967
Filing Code Description: No Fee Documents
Filing Description: Opinion
Status as of 8/12/2025 11:43 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Brett MauriceCharhon | | bcharhon@ccrglaw.com | 8/12/2025 11:21:52 AM | SENT |
| Steven Callahan | | scallahan@ccrglaw.com | 8/12/2025 11:21:52 AM | SENT |
| Julie Pettit | 24065971 | jpettit@pettitfirm.com | 8/12/2025 11:21:52 AM | SENT |
| David Urteago | 24079493 | durteago@pettitfirm.com | 8/12/2025 11:21:52 AM | SENT |
| Patricia Perkins | | pperkins@pettitfirm.com | 8/12/2025 11:21:52 AM | SENT |
| Mazin Sbaiti | | mas@sbaitilaw.com | 8/12/2025 11:21:52 AM | SENT |
| Kim James | | krj@sbaitilaw.com | 8/12/2025 11:21:52 AM | SENT |
| Bryan J.Wick | | bryan.wick@wickphillips.com | 8/12/2025 11:21:52 AM | SENT |
| Michael Zweber | | mzweber@ccrglaw.com | 8/12/2025 11:21:52 AM | SENT |
| Angela Ivy | | aivy@ccrglaw.com | 8/12/2025 11:21:52 AM | SENT |
| Chinar Hassan | | chinar.hassan@wickphillips.com | 8/12/2025 11:21:52 AM | SENT |
| Sheryl Haywood | | sheryl.haywood@sbaitilaw.com | 8/12/2025 11:21:52 AM | SENT |
| Scott Scher | | scott.scher@sbaitilaw.com | 8/12/2025 11:21:52 AM | SENT |
| CCRG  Service | | service@ccrglaw.com | 8/12/2025 11:21:52 AM | SENT |
| Brad Robinson | | bjr@sbaitilaw.com | 8/12/2025 11:21:52 AM | SENT |
| Griffin Rubin | | gsr@sbaitilaw.com | 8/12/2025 11:21:52 AM | SENT |
| Maya Manuel | | maya.manuel@sbaitilaw.com | 8/12/2025 11:21:52 AM | SENT |
| Keith Koshkin | | keith.koshkin@wickphillips.com | 8/12/2025 11:21:52 AM | SENT |
| Business Court 1B | | BCDivision1B@txcourts.gov | 8/12/2025 11:21:52 AM | SENT |
| Tricia Tomasky | | tricia.tomasky@sbaitilaw.com | 8/12/2025 11:21:52 AM | SENT |
| Mary Torres | | mtorres@pettitfirm.com | 8/12/2025 11:21:52 AM | SENT |