

# The Business Court of Texas, Eleventh Division

| | | |
|---|---|---|
| M. BROWN,<br><br>　　*Plaintiff,*<br><br>v.<br><br>EXXON MOBIL CORPORATION,<br><br>　　*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Cause No. 25-BC11B-0099 |

## *Syllabus**

This opinion addresses the Business Court's jurisdiction over an employment discrimination case brought pursuant to Section 21.051 of the Texas Commission on Human Rights Act. Defendant filed a removal notice asserting the Business Court had subject matter jurisdiction based on Texas Government Code Section 25A.004(b)(2) as "an action regarding" the "internal affairs of an organization" and Section 25A.004(d)(1) as an action arising out of a "qualified transaction." The Business Court here finds that it lacks jurisdiction of Plaintiff's employment discrimination action under either provision and remands the case to the originating district court.

---

* The syllabus was created by court staff and is provided for the convenience of the reader. It is not part of the Court's opinion, does not constitute the Court's official description or statement, and should not be relied upon as legal authority.



# The Business Court of Texas, Eleventh Division

| | | |
|---|---|---|
| M. BROWN,<br>    *Plaintiff,*<br><br>v.<br><br>EXXON MOBIL CORPORATION,<br>    *Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Cause No. 25-BC11B-0099 |

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

### I.    Introduction

¶1    Artis M. Brown, a long-time employee of Exxon Mobil Corporation ("ExxonMobil"), filed an employment discrimination claim against ExxonMobil pursuant to Texas Labor Code Section 21.051.   After filing his charge of discrimination and receiving a right to file civil action from the Texas Workforce Commission, Brown filed his petition in the 11th District Court of Harris County. ExxonMobil removed the case to this Court and Brown responded by filing a motion to remand the case to the original district court.

¶2　Here, this Court must decide whether it has jurisdiction over Brown's employment discrimination claim under Government Code Section 25A.004(b)(2) as "an action regarding the governance, governing documents, or internal affairs of an organization" or under Section 25A.004(d)(1) as a claim "arising out of a qualified transaction." Since the Court finds Brown's claim does not meet either ground, it concludes that the Court lacks subject matter jurisdiction of this action and remands the case to the 11th District Court of Harris County.

## II.　Background

¶3　Brown is a 29-year employee of ExxonMobil who served in various executive roles within the corporation. Most recently he held the position of Vice President of Basestocks & Waxes for ExxonMobil Product Solutions Company ("EMPSC"), a division of ExxonMobil. The parties agree that Brown's employment with ExxonMobil ended on July 25, 2025, but disagree about the circumstances of his departure.

¶4　ExxonMobil contends that in July of 2025, Brown was randomly selected and administered an unannounced drug test pursuant to its Alcohol and Drug Use Policy ("ADU Policy").[1] ExxonMobil claims Brown tested positive for THC-metabolite, and after meeting with human resources Brown resigned.[2] Brown,

---

[1] Notice of Removal to Bus. Ct. 2, Dec. 22, 2025 ("Notice of Removal").

[2] *Id.*

contends he was unlawfully terminated based on his race. Brown asserts he did not violate the ADU Policy since it does not restrict consumption of THC-metabolite as it is not an "illicit or unprescribed or controlled drug" under the ADU Policy.[3] Brown alternatively asserts that even assuming he violated the ADU policy, he was treated differently from other non-black executives who have also violated the policy.

¶5 Brown timely filed a charge of discrimination with the Texas Workforce Commission Civil Rights Division ("TWC") on October 31, 2025. After receiving a notice of right to file a civil action from TWC, Brown filed his original lawsuit in the 11th District Court of Harris County on November 26, 2025.

¶6 In his petition, under the heading "Race Discrimination in Violation of the Texas Labor Code," Brown asserts a statutory cause of action under Section 21.051(1) for unlawful racial discrimination.[4] Under Section 21.051(1) an employer commits an unlawful employment practice if because of race it "discharges an individual or discriminates in any other manner against an individual in connection with compensation, or the terms, conditions or privileges of employment."[5]

---

[3] *Id.* Ex. A.

[4] Pl.'s Original Pet. § VII., Nov. 26, 2025 ("Pet.").

[5] TEX. LAB. CODE § 21.051(1).

¶7     Brown alleges ExxonMobil violated Section 21.051 when it "discharged Brown and/or discriminated against him in connection with his compensation upon termination by forfeiting his previously granted incentive compensation" because he is black.[6] Brown also claims his incentive compensation was forfeited when he was terminated, and since other non-black executives that previously violated the ADU Policy have been allowed to keep their granted incentive awards that forfeiture was also discriminatory.[7]

¶8     ExxonMobil alleges that a series of yearly Incentive Award Agreements it conferred on Brown from 2018 to 2024 are at issue in his lawsuit. The incentive awards are governed by the ExxonMobil Corporation 2003 Incentive Program ("Incentive Program").[8] Under the Incentive Program, Brown was granted two types[9] of incentives; short term bonuses that were paid at the time of the award and Restricted Stock Units ("RSUs") that required Brown to remain employed at ExxonMobil for a staggered vesting period.[10] Brown claims "[ExxonMobil] canceled approximately $5 million in previously awarded incentive compensation."[11]

---

[6] Pet. at ¶17.

[7] *Id.* ¶¶13–14.

[8] Pl.'s Mot. to Remand Ex. B, Feb. 20, 2026.

[9] The awards contain references to an "Earnings Bonus Unit" award which appear to be used to calculate the short-term bonuses.

[10] Pl.'s Mot. to Remand Ex. B, Feb. 20, 2026.

[11] Def.'s Resp. to Pl.'s Mot. to Remand Ex. A, Feb. 20, 2026.

4

¶9    Brown seeks back pay, front pay,[12] lost fringe benefits, compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other pecuniary losses. He also seeks exemplary damages and statutory attorney's fees.

¶10    ExxonMobil timely removed the case to this Court asserting jurisdiction based on two provisions: (i) Section 25A.004(b)(2) as "an action regarding the governance, governing documents or internal affairs of an organization"; and (ii) Section 25A.004(d)(1) because this action arises out of a "qualified transaction," since, pursuant to its agreement, ExxonMobil would have paid "consideration of at least $5 million."[13]

---

[12] *Bell Helicopter Textron, Inc. v. Burnett,* 552 S.W.3d 901, 919 (Tex. App.—Fort Worth 2018, pet. denied) ("'Front pay' is a wrongfully-discharged plaintiff's compensation for future lost wages and benefits. A front pay award serves to make victims of discrimination 'whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment.'").

[13] Notice of Removal at 3.

### III. The Business Court Lacks Jurisdiction of the Action Under Section 25A.004(b)(2)

#### A. ExxonMobil's Arguments in Support of Jurisdiction as an Action Regarding an "Internal Affair"

¶11    ExxonMobil argues Brown's lawsuit meets the jurisdictional requirements of Section 25A.004(b)(2) as "an action regarding the governance, governing documents, or internal affairs of an organization" because it meets the definition of "internal affairs."[14]  ExxonMobil presents three primary arguments.

¶12    First, ExxonMobil argues that since Brown's petition alleges ExxonMobil's CEO Darren Woods participated in the decision to terminate Brown, the action necessarily involves the "rights, powers, and duties of an organization's governing persons [or] officers"—prong one of the statutory definition of "internal affairs."[15]  ExxonMobil argues that since Woods is both a governing person and a decision maker regarding Brown's termination, that under Section 25A.001(7)(A) the action is one "in connection with rights, powers, and duties relating to the company's Standards of Business Conduct, specifically the ADU policy"[16]

¶13    Second, ExxonMobil argues that since Brown himself was a Vice President at ExxonMobil he qualifies as an EMPSC "officer" and "governing

---

[14] *Id.*

[15] *Id.*; TEX. GOV'T CODE § 25A.001(7)(A).

[16] Notice of Removal at 4.

person" under Section 25A.001(7)(A), and therefore this lawsuit necessarily "regards the rights, powers and duties of an organization's persons [or] officers," by virtue of Brown's own status.[17]

¶14    Third, ExxonMobil argues that this action meets the definition of "internal affairs" because it "regards ExxonMobil's Incentive Program and/or Brown's RSU Agreement."[18]  ExxonMobil asserts Brown's compensation included his base salary and discretionary bonuses arising out of their Incentive Program, that included RSUs, which would automatically cancel and be forfeited upon resignation or termination.  Since Brown asserts entitlement to RSUs awarded under the Incentive Program, ExxonMobil argues Brown's disputes are "matters relating to the organization's membership or ownership interests"[19] under Section 25A.001(7)(A).  Here, ExxonMobil cites to the definition of ownership interests in Section 25A.001(12)[20] and argues the RSU's awarded to Brown "once vested"[21] become ownership interests in ExxonMobil which brings the dispute under the ambit of Section 25A.001(7)(A).

---

[17] *Id.* at 4–5.

[18] *Id.* at 5.

[19] *Id.*

[20] TEX. GOV'T CODE § 25A.001(12) ("'Ownership interest' means an owner's interest in an organization, including an owner's economic, voting, and management rights.").

[21] Notice of Removal at 5.

**B. Brown's Arguments Opposing Jurisdiction Under Section 25A.004(b)(2)**

¶15    In his Motion to Remand, Brown argues his claim is an employment discrimination case and his "single cause of action for race discrimination" is not an "action regarding the internal affairs of an organization" under Section 25A.004(b)(2).[22]    He contends that the meaning of "internal affairs" does not encompass a statutory claim of illegal discrimination and that ExxonMobil is employing a hyperliteral interpretation that would lead to sweeping jurisdiction over any employment dispute within a publicly traded company.  Brown argues that the "happenstance" that the perpetrator or victim of that discrimination is a corporate officer does not transform "a regular employment discrimination case into an action" covered by Section 25A.004(b)(2).[23]

¶16    Brown argues that ExxonMobil's pleading refutes the existence of a dispute relating to ownership interests.  He asserts that because the RSUs are unvested and because the Incentive Program "states that 'an award will not give the grantee any rights as a shareholder' until any shares are actually issued," the RSUs merely could become ownership interests in the future.[24]

---

[22] Pl.'s Mot. to Remand 1, Jan. 21, 2026.

[23] *Id.* at 7.

[24] *Id.* at 6.

### C. Applicable Law

#### 1. Legal Standards

¶17     Whether Brown's lawsuit can be removed to the Business Court is a matter of statutory interpretation.  When interpreting a statute, courts generally "rely on the plain meaning of the statute's words to discern legislative intent."[25]  In doing so, the court's duty is to construe the Legislature's chosen words and phrases within the context and framework of the statute as a whole, not in isolation.[26]  A "fundamental principle of statutory construction and indeed of language itself is that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used."[27]  Thus, the reasonableness of each definition must be analyzed in light of the statutory context.[28]  The court applies the text's plain meaning unless "(1) the Legislature has prescribed definitions, (2) the words have acquired a technical or particular meaning, (3) a contrary intention is apparent from the context, or (4) a plain-meaning construction would lead to nonsensical or absurd results."[29]

---

[25] *Aleman v. Tex. Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019) (internal quotation marks omitted).

[26] *In re Tex. Educ. Agency*, 619 S.W.3d 679, 687 (Tex. 2021).

[27] *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 59 (Tex. 2015).

[28] *Id.* citing *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014).

[29] *In re Tex. Educ. Agency*, 619 S.W.3d at 687.

### 2. Business Court Jurisdiction

¶18    After multiple attempts, the Texas Legislature created the Texas Business Court as a specialty court to adjudicate complex commercial disputes through the passage of House Bill 19 in 2023, codified in Chapter 25A of the Texas Government Code.[30]    In Section 25A.0041, the Texas Legislature directed the Supreme Court to adopt rules for the prompt determination of Business Court jurisdiction, and described the Business Court's purpose as "efficiently addressing complex business litigation in a manner comparable to or more effective than the business and commercial courts operating in other states."[31]    Although Business Court judges are granted "all powers, duties, immunities, and privileges of a district court judge," as a specialty court created pursuant to Section 1, Article V of the Texas Constitution, the Business Court's jurisdictional grant is far more circumscribed than that of the district courts in the state.[32]

¶19    Section 25A.004 defines the Texas Business Court's specialized original jurisdiction across two broad categories, each with minimum amount in controversy thresholds of five million dollars.[33]    The first is Section 25A.004(b),

---

[30]  *See* Act of May 25, 2023, 88th Leg., R.S., ch. 380, § 1, 2023 Tex. Sess. Law Serv. 919, 919; *Sebastian v. Durant*, 2025 Tex. Bus. 4, ¶ 10, 707 S.W.3d 124, 126 (11th Div.).

[31] TEX GOV'T CODE § 25A.0041(1).

[32]  *Id.* §§ 25A.002, 25A.005.

[33] *Chaudhry v. Stillwater Cap. Inv s., LLC*, 2025 Tex. Bus. 31, ¶ 51, 721 S.W.3d 230, 240 (1st Div.).

which generally covers business affairs including internal, entity and owner-type, disputes (seven categories generally related to derivative, breach of fiduciary duty, governance and control, Business Organizations Code, and securities or trade regulation causes of action).[34]  The second is Section 25A.004(d) which generally covers external business transaction disputes (involving "qualified transactions," parties' agreements to business court jurisdiction, and certain Finance Code or Business and Commerce Code disputes).[35]  Notably, the Business Court also has civil jurisdiction over the types of internal, entity and owner type disputes listed in 25A.004(b) and the legislature imposed no minimum amount in controversy threshold to such disputes involving publicly traded companies.[36]

¶20   To provide further context to Brown's statutory claims, the Court reviews the purpose and structure of the Texas Commission on Human Rights Act (TCHRA) contained in Chapter 21 of the Texas Labor Code.

### 3. Texas Commission on Human Rights Act

¶21   Brown's employment discrimination lawsuit alleges violations of the Texas Commission on Human Rights Act (TCHRA). The Texas Legislature adopted the TCHRA, "to address the specific evil of discrimination and retaliation in the

---

[34] *See Id.*

[35] *See Id.*

[36] TEX GOV'T CODE § 25A.004(c).

11

workplace, as well as to coordinate and conform with federal anti-discrimination and retaliation laws under Title VII."[37] TCHRA is a comprehensive fair employment practices act and remedial scheme, modeled after Title VII of the federal Civil Rights Act of 1964, that provides the framework for employment discrimination claims in Texas.[38]

¶22 Section 21.001, also expressly defines the TCHRA's purpose as providing for "the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments."[39] The United States Supreme Court has identified a two-fold purpose behind Title VII's enactment: (1) eliminating employment discrimination, and (2) allowing the aggrieved party to be made whole for those injuries suffered on account of unlawful employment discrimination"[40] Other express purposes listed in Section 21.001 include to "make available to the state the full productive capacities of persons," "avoid domestic strife," "preserve the public safety, health, and general welfare," and to "promote the interests, rights and privileges of persons in this state."[41] These aspirational

---

[37] *Prairie View A&M Univ. v. Chatha*, 381 S.W. 3d 500, 504 (Tex. 2012) (citing *City of Waco v. Lopez*, 259 S.W.3d 147, 153–55 (Tex. 2008)).

[38] *Id.* at 502–03.

[39] TEX. LAB. CODE § 21.001.

[40] *Wal–Mart Stores, Inc. v. Davis*, 979 S.W.2d 30, 37 (Tex. App—Austin 1998, pet. denied) (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 417–18, 95 S. Ct. 2362, 45 L.Ed.2d 280 (1975)).

[41] TEX. LAB. CODE § 21.001(5), (6), (7), (8).

purposes reflect the Legislature's intent to protect Texas workers from discriminatory employment practices across multiple protected categories.

¶23 Brown alleges ExxonMobil violated Section 21.051 of the TCHRA, which prohibits an "employer" from committing an unlawful employment practice by failing to hire, discharging, or discriminating in any other manner against an "individual" in connection with their employment, because of race, color, disability, religion, sex or age. That section also prohibits an employer from limiting, segregating or classifying an "employee" in a manner that would deprive an individual of an employment opportunity or adversely affect in any other manner the status of an employee.[42]

¶24 The TCHRA provides multiple forms of relief including equitable remedies, attorney's fees, punitory, and compensatory damages. Section 21.2585 institutes caps on compensatory damages in differing amounts dependent on the number of employees. Front pay, when awarded under the TCHRA, constitutes equitable relief rather than compensatory damages and therefore is not subject to the statutory cap on compensatory damages.[43]

---

[42] *See* TEX. LAB. CODE § 21.051.

[43] *See Bell Helicopter*, 552 S.W.3d at 924.

**D. Application**

**1. Chapter 25A.004(b)(2)**

¶25    ExxonMobil contends the Texas Business Court has jurisdiction over Brown's claims pursuant to 25A.004(b)(2) which provides in relevant part:

> (b) Subject to Subsection (c), the business court has civil jurisdiction concurrent with district courts in the following actions in which the amount in controversy exceeds $5 million, excluding interest, statutory damages, exemplary damages, penalties, attorney fees, and court costs:
>
> (2) an action regarding the governance, governing documents, or internal affairs of an organization."

¶26    Thus, the Court's jurisdictional analysis under Section 25A.004(b) hinges on whether Brown's discrimination claim is an "action" "regarding" ExxonMobil's "governance, governing documents or internal affairs."[44]

¶27    The term "action" is undefined in Chapter 25A but is generally synonymous with "suit, which is a demand of one's rights in court."[45] This Court, applying Texas Supreme Court precedent, has defined action as referring to "an entire lawsuit or cause or proceeding, not to discrete 'claims' or 'causes of action'

---

[44] The Court finds, and on this the parties agree, that ExxonMobil is a public company and therefore no minimum amount in controversy applies to this action pursuant to Section 25A.004(c).

[45] *See Jaster*, 438 S.W.3d at 563–64; *Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex. 1995).

14

asserted within a suit."[46]  The term "regarding" is defined as with "respecting; concerning."[47]

¶28    ExxonMobil also contends Brown's action fits within the definition of "internal affairs" in 25A.004(b)(2) and expressly defined in 25A.001(7) which provides:

> (7) "Internal affairs" means:
>
> (A) the rights, powers, and duties of an organization's governing persons, officers, owners, and members; and
>
> (B) matters relating to the organization's membership or ownership interests.
>
> Finally, 25A.001(12) provides:
>
> (12) "Ownership interest" means an owner's interest in an organization, including an owner's economic, voting, and management rights.

2. *Noscitur a sociis*

¶29    Each of ExxonMobil's three arguments in support of the Court's jurisdiction based on Section 25A.004(b)(2) rely on an interpretation of the term "internal affairs."   Mindful that "words' meanings cannot be determined in isolation but must be drawn from the statutory context in which they are used,"[48]

---

[46] *Yadav v. Agrawal*, 2025 Tex. Bus. 7, ¶ 27, 708 S.W.3d 246 at 255 (3d Div.) (Citing *Jaster*, 438 S.W.3d at 563–64).

[47] *Chaudhry*, 2025 Tex. Bus. 31, ¶ 51, 721 S.W.3d at 240 ("'Regarding' is a preposition that means 'with regard to; respecting; concerning.' regarding, Dictionary.com.").

[48] *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011).

the Court applies the canon of construction known as *noscitur a sociis*—"it is known by its associates"—to provide context for the term "internal affairs."[49] This canon holds that the meaning of a word or phrase, especially one in a list, should be known by the words immediately surrounding it.[50] *Noscitur a sociis* is applied to avoid ascribing to one word a meaning so broad that it is incommensurate with its statutory context. It commands that "internal affairs" in Section 25A.004(b)(2), be read in context with the remaining terms in the series, in this case; "governance" and "governing documents."

### a. 25A.004(b)(2)

¶30    The term "governance" is not defined in Chapter 25A. However, Section 25A.001 does define a "governing person" as one who is entitled to "manage and direct an organization's affairs *under the governing documents and governing law*."[51] Thus, "'governance' as used in Section 25A.004(b)(2) relates to the management and direction of the entity's affairs under its governing documents and applicable law."[52]

---

[49] *Id.*

[50] *Id.*; *Noscitur a sociis*, Antonin Scalia & Bryan A. Garner, *Reading Law: Interpretation of Legal Texts* 195 (1st ed. 2012).

[51] TEX. GOV'T CODE § 25A.001(5); *Reed v. Rook*, 2025 Tex. Bus. 23, ¶ 11, 718 S.W.3d 270 at 276 (3d Div.) (emphasis added).

[52] *Reed v. Rook*, 2025 Tex. Bus. 23, ¶ 11, 718 S.W.3d at 276.

¶31 "Governing documents" are defined in Section 25A.001 as "the instruments, documents, or agreements adopted under an organization's governing law to govern the organization's formation and internal affairs."[53] Section 25A.001 also lists seven types of documents that "govern the organizations formation and internal affairs." They include certificates of formation, bylaws, a partnership agreement, a company agreement or operating agreement, a shareholder agreement, a voting agreement or voting trust agreement and an agreement among owners restricting the transfer of ownership interests.[54]

¶32 Thus, the statutory company that "internal affairs" keeps in Section 25A.004(b)(2) concerns the "management and direction of the entity's affairs under its governing documents and applicable law" and the documents "adopted under an organization's governing law to govern the organization's *formation and internal affairs.*" Applying the neighboring context of "internal affairs" in Section 25A.004(b)(2) reveals its character as one of internal entity governance dictated by the entity's governing documents and governing law.

#### b. 25A.001(7)(A)

¶33 Similarly, *noscitur a sociis* assists with the interpretation of Section 25A.001(7)(A). That section defines "internal affairs" as the "rights, powers, and

---

[53] TEX. GOV'T CODE § 25A.001(3).

[54] *Id.*

duties of an organization's governing persons, officers, owners, and members." Here, the word "rights" is given context by its associates, "powers, and duties" and read in conjunction with the phrase "an organization's governing persons, officers, owners, and members" suggesting a narrower construction of the term "rights."

¶34    Further applying the canon to "governing persons, officers, owners, and members" in light of the statutory definition of "governing person" as one who is entitled to "manage and direct an organization's affairs under the governing documents and governing law," yields an interpretation of the term "rights" as those rights arising from a "governing person, officer, owner or members" role under the organization's governing documents and governing law," rather than all rights personal to the individual holding that title.

¶35    Against this backdrop, the Court considers ExxonMobil's three arguments in support of Business Court jurisdiction under 25A.004(b)(2).

## 3. Unspecified "participation" in an Employee Termination Decision by ExxonMobil's CEO Does Not Create Business Court Jurisdiction under Section 25A.004(b)(2)

¶36    ExxonMobil first claims that because Brown's petition alleges CEO Darren Woods participated in the decision to terminate Brown, this is evidence that the lawsuit is a matter regarding "internal affairs" of the corporation under Section 25A.004(b)(2), and thus within the jurisdiction of the Business Court.

18

¶37    As an initial matter, the pleadings do not specify how Woods's "participation" impacted the decision to terminate Brown. Brown's petition mentions Woods twice. First, Brown alleges that Woods "made the decision not to terminate T.D.," another executive that Brown alleges was treated more favorably than him, and second that Woods participated in the decision to terminate Brown.[55] No specific information is offered by either party about the nature or extent of Woods's alleged participation.

¶38    ExxonMobil claims that Woods's alleged participation in Brown's termination, and his position as an officer or governing person, places the wrongful termination claim squarely within the definition of "internal affairs" in Section 25A.001(7)(A). While Woods qualifies as an officer and governing person under Section 25A.001(9), the question the Court must analyze is whether his alleged, unspecified, "participation" in an employment decision is sufficient to qualify as an "action" "regarding" ExxonMobil's "internal affairs" under Section 25A.004(b).

¶39    The duties of a public corporation's CEO are multifaceted. Not every action taken by a CEO qualifies under Section 25A.004(b) as one that involves the internal affairs of a corporation. The Court must give fair meaning to the text and

---

[55] Pet. at ¶ 13.

19

avoid a hyperliteral interpretation of each word in the text.[56]  As set forth in section III.D.2., *supra*, "internal affairs'" is read in context with two associated terms, "governance" and "governing documents," which are best understood as encompassing internal entity governance as dictated by the entity's governing documents and governing law.

¶40    In *Reed v. Rook*, a case interpreting Section 25A.004(b)(2), the Business Court concluded it had jurisdiction so long as the claims at issue were "not tangential" and instead "go to fundamental issues" of internal affairs.[57]  The Court noted, this "does not mean that pleadings containing a tangential reference to a business's governing documents or internal affairs automatically trigger jurisdiction under Section 25A.004(b)(2).[58]

¶41    This case is an employment discrimination case brought pursuant to Section 21.051 of the TCHRA.  All parties agree that Brown was an at-will employee of ExxonMobil and Brown does not question whether Woods, as CEO, had the power *based on his position* within the organization to terminate Brown.  Instead, Brown's action concerns ExxonMobil's ability to *lawfully* terminate him.  Brown's claim

---

[56] Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 356 (1st ed. 2012) ("Adhering to the *fair meaning* of the text (the textualists touchstone) does not limit one to the hyperliteral meaning of each word in the text.").

[57] *Reed v. Rook*, 2025 Tex. Bus. 23, ¶ 21–22, 718 S.W.3d at 278–79.

[58] *Id.* at 280.

could only tangentially fit the definition as one "regarding the governance, governing documents, or internal affairs of an organization."[59]

¶42    Based on Brown's claim, the primary issue is whether an actor—whatever their title—with the power to terminate Brown did so unlawfully in violation of Section 21.051 of the Texas Labor Code, a statute with the express purpose of eliminating illegal employment discrimination in the workforce, and allowing victims of discrimination to be made whole for injuries suffered on account of unlawful employment discrimination.[60]  The statute applies to businesses small and large, publicly and privately held, and government and non-government employers.[61]

¶43    Under the interpretation of "internal affairs" ExxonMobil urges this Court to adopt, almost any CEO decision made or action taken would involve the "rights, powers, and duties of an organization's governing persons [or] officers," conferring Business Court jurisdiction.  The Court declines to adopt such an expansive interpretation of internal affairs and here finds that Brown's general

---

[59] *Id.*

[60] *See Wal–Mart Stores, Inc.*, 979 S.W.2d at 37 (citing *Albemarle Paper Co.*, 422 U.S. at 417–18, 95 S. Ct. 2362, 45 L.Ed.2d 280).

[61] Chapter 21.002 of the Texas Labor Code applies to employers with 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year though government entities are covered regardless of size.

allegations of Woods "participation" in a termination decision do not trigger the Business Court's jurisdiction under Section 25A.004(b)(4).

**4. Brown's Status as a Vice President of an ExxonMobil Division Does Not Create Business Court Jurisdiction under Section 25A.004(b)(4)**

¶44 Relatedly, in their second argument, ExxonMobil contends that because Brown is a Vice President of a division of ExxonMobil, his claim meets the definition of "internal affairs" because it "regards the 'rights, powers, and duties of an organization's governing persons, officers, owners, and members.'" ExxonMobil claims Brown was "an EMPSC an officer and governing person" of the corporation, and that his claim "alleges violations of rights" under the TCHRA.

¶45 Here, the Court must determine whether Brown's employment discrimination action is one "regarding" ExxonMobil's "internal affairs" under Section 25A.004(b) due to his status as a Vice President, and thus an officer and governing person under Section 25A.001(7)(A).

¶46 As set forth in section III.D.2., *supra*, the word "rights" is given context by its associates, "powers, and duties" and read in conjunction with the phrase "an organization's governing persons, officers, owners, and members." Since "rights" is contextually tied to "powers and duties," and framed by the phrase "of an organization's governing persons, officers, owners, and members," this applies a contextual interpretation of "rights" commensurate with "powers and duties."

22

¶47   Thus, a fair reading of the "rights" described in 25A.004(b)(2) are those "of an organization's governing persons, officers, owners, and members," derived from their official, titular role within the organization. But the right to be free from unlawful racial discrimination in the workplace and the concomitant right to seek redress for injuries sustained resulting from alleged discrimination are statutory rights derived from Section 21.051 of the TCHRA and common to millions of other managerial and non-managerial employees in Texas. Brown's employment discrimination lawsuit concerns rights that do not arise from his status as an officer, but from his status as an employee. Therefore, despite his role as officer and governing person, the Court finds Brown's employment discrimination action based on Section 21.051 is not an action "regarding" ExxonMobil's "internal affairs" under Section 25A.004(b)(4).

### 5. Brown's Claim Does Not Qualify as a Matter Relating to ExxonMobil's Ownership Interests

¶48   ExxonMobil's third argument is that Brown's lawsuit is subject to the Business Court's jurisdiction because it meets the second definition of "internal affairs" in 25A.001(7)(B) as a matter "relating to the organization's membership or ownership interests." Ownership interests are defined under Section 25A.001(12) as "an owner's interest in an organization, including an owner's economic, voting, and management rights." ExxonMobil contends Brown seeks to recover as damages certain incentive pay including future stock holdings under the Incentive Program

23

and thus Brown's discrimination claim falls within the definition of "internal affairs."

¶49   The Court first turns to the Incentive Program and Brown's awarded RSUs thereunder that were then forfeited upon his termination.

### a.  The ExxonMobil Incentive Program

¶50   While employed at ExxonMobil, under the Incentive Program, Brown was annually awarded incentives from 2018 to 2024.  As stated above, the awards were primarily of two types; short-term bonuses and RSUs.  The short-term bonuses consisted of immediately-vesting stock awards and are not at issue in Brown's lawsuit.  The RSUs instead vest over time which requires recipients to be employed by ExxonMobil for a defined period.

¶51   The Incentive Program gives broad discretion to the ExxonMobil Board for the granting, amendment, and forfeiture of the award incentives.  Section V of the Incentive Program provides that:

> The Board is the ultimate granting authority for this [Incentive] Program, with the power to select eligible persons for participation and to make all decisions concerning the grant or amendment of awards. . . . The granting authority has sole discretion to select persons for awards under this [Incentive] Program, except that grants may be made only to persons who at the time of grant are, or within the immediately preceding 12 months have been, employees of the Corporation.

¶52 The Incentive Program is clear that no employee is entitled to bonus awards "as a matter of right" and does not entitle the employee recipient to receive "future or additional awards."

¶53 Importantly, Brown's claim concerning the annual discretionary RSUs does not involve the interpretation of the Incentive Program's terms as Brown "does not dispute [ExxonMobil's] ability to withhold any employee benefit if allowed to do so under a relevant agreement or internal company document."[62] Instead, Brown argues the decision to forfeit the RSUs was discriminatory since "non-Black executives who violated a Business Conduct Standard of comparable seriousness have been allowed to keep their previously granted incentive awards."[63] Thus, Brown's claim concerns whether, in its discretion, ExxonMobil treated Brown inequitably by forfeiting his RSUs due to his race in violation of Section 21 of the TCHRA.

¶54 Brown contends the RSUs are not "ownership interests" because they are non-vested. To support this, Brown points to provisions in the Incentive Program, including paragraph 5 and 9. First, paragraph 5 provides "an award will not give the grantee any rights as a shareholder until any shares subject to or deliverable in settlement of the award are actually issued and registered in the name

---

[62] Pl.'s Reply in Supp. of Mot. to Remand 6, Feb. 25, 2026.

[63] Pet. at ¶ 14.

of the grantee free of restriction." Second, paragraph 9 provides the grantee only has a contractual right to the shares or amounts awarded "unsecured by any assets of the Corporation or entity."

### b. Application

¶55 The Court must decide whether Brown's TCHRA employment discrimination claim, which seeks damages due to ExxonMobil's discretionary decision to not award Brown RSU based incentive compensation, is an "action" "regarding" the "internal affairs of an organization"[64] Again, the Court construes the Legislature's chosen words and phrases within the context and framework of the Chapter 25A as a whole, analyzing each definition in light of the statutory context:[65]

¶56 **An Action.** The "action" is Brown's race discrimination claim alleging violations of the TCHRA which seek damages based on ExxonMobil's allegedly discriminatory and discretionary decision not to allow Brown to keep his RSUs even though similarly situated "non-Black executives" were allowed to keep their incentive awards.[66]

---

[64] TEX. GOV'T CODE § 25A.004(b)(2).

[65] *In re Tex. Educ. Agency*, 619 S.W.3d at 687; *Jaster*, 438 S.W.3d at 562.

[66] Pet. at ¶ 14. ("Finally, even if ExxonMobil's conduct in terminating Brown was not discriminatory, its forfeiture of Brown's previously granted incentive compensation was. In the past, non-Black executives who violated a Business Conduct Standard of comparable seriousness have been allowed to keep their previously granted incentive awards. One such example M.L., who was terminated in 2015 for a far more serious violation of ExxonMobil's Business Conduct Standards.").

¶57    **Regarding the Internal Affairs.** The term "regarding" is defined as "respecting; concerning."[67]   Here, "regarding" connects the "action" to the "internal affairs."   Section 25A.001(7)(b) defines "internal affairs" as "matters relating to the organization's membership or ownership interests."

¶58    **Matters.** The term "matters" is not defined in the statute, however a relevant definition is "a subject of disagreement or litigation."[68]

¶59    **Relating to.** As to the term "relating to," the Business Court has observed that the phrase is construed broadly by Texas courts.[69]

¶60    **The Organization's Ownership Interest.** Ownership interests are defined in Section 25A.001(12) as "an owner's interest in an organization, including an owner's economic, voting, and management rights."

¶61    Thus, taken together, in order for the Court to have jurisdiction, the action must respect or concern a subject of disagreement relating to ExxonMobil's ownership interests.   This present action is one involving "race discrimination in violation of the Texas Labor Code."[70]   Thus, the analysis is whether the RSUs

---

[67] *Chaudhry*, 2025 Tex. Bus. 31, ¶ 51, 721 S.W.3d at 240 ("'Regarding' is a preposition that means 'with regard to; respecting; concerning.' regarding, Dictionary.com.").

[68] MERRIAM-WEBSTER ONLINE DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/matters (last visited May 27, 2026).

[69] *Go Secure, Inc. v. CrowdStrike, Inc.*, 2026 Tex. Bus. 13, ¶ 40, 2026 WL 736289 at *11 (3rd Div.).

[70] Pet. at § VII.

governed by the Incentive Program are a subject of disagreement that relate to ExxonMobil's ownership interest.

¶62 Here, the allegedly discriminatory discretionary forfeiture of the RSUs awarded to Brown under the Incentive Program are the "matter" or "subject of disagreement or litigation" that provide the sole basis upon which ExxonMobil seeks jurisdiction under 25A.007(B). Brown does not dispute the terms of the Incentive Program. Brown's sole allegation, referencing the RSUs as a basis for damages, is that ExxonMobil didn't treat him like other similarly situated employees because of his race in violation of the TCHRA.

Under the definition of internal affairs, the "matter" must "relate to" "the organization's membership or ownership interests." Here, the gravamen of Brown's claim is that ExxonMobil unlawfully terminated him and made an unlawful discretionary decision to forfeit his incentive compensation.

¶63 And while the incentive compensation in question did involve non-vested RSUs that appear to have been offered to specified employees with the purpose of rewarding past production and tying their financial interest to the company's long-term success, the Court determines Brown's discrimination claim does not relate to the existence, award, or even monetary value of the ownership interests themselves and therefore they are not a "fundamental issue" of the case.[71]

---

[71] *Reed v. Rook*, 2025 Tex. Bus. 23, ¶ 21–22, 718 S.W.3d at 278–79.

Brown's claim does not turn on the category of assets involved, the award of those assets, or the value of the assets. It is of no consequence to Brown's claim whether the asset in question consisted of RSUs, future cash awards, or free gas for life. Whatever the consideration, this action is regarding the *decision* to forfeit Brown's incentive compensation, because of purported race discrimination.

¶64 The Court declines to read Chapter 25A or the TCHRA in a hyperliteral manner that would yield outcomes inconsistent with their statutory purpose. Although when considered in isolation, the RSUs themselves tangentially relate to the organization's ownership interests, the Court must consider and apply the statute as a whole to determine if the Court has jurisdiction.[72] Here, the Court only has jurisdiction if the action respects or concerns a subject of disagreement relating to ExxonMobil's ownership interests. This is a discrimination action. The subject of disagreement is not the RSUs themselves, it is ExxonMobil's allegedly discriminatory decision not to award them to Brown based on his race. Therefore, the Court finds that it does not have jurisdiction of the case under 25A.004(b).

---

[72] *Id.* ¶ 11.

## IV. Brown's Claims Do Not Arise Out of a Qualified Transaction

¶65    ExxonMobil next argues that the Business Court has jurisdiction over this action because it arises out of a "qualified transaction," under Section 25A.004(d)(1) since, pursuant to incentive awards granted based on the Incentive Program, ExxonMobil would have paid "consideration of at least $5 million."[73] Section 25A.001(14) defines a qualified transaction as "a transaction, or series of related transactions . . . under which a party: (A) pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $5 million . . . .."

### A.  ExxonMobil – Qualified Transaction Arguments

¶66    Arguing that there are a series of related transactions supporting Brown's claims for damages, ExxonMobil claims "Brown seeks damages exceeding $5 million based on consideration he claims ExxonMobil was required to pay and he was entitled to receive"[74] including, among other relief:

> (a.) direct or general damages; (b.) back pay, plus prejudgment interest as provided by law, from the date of the adverse employment action until the date of judgment; (c.) an award of the present value of the front pay due to him for a reasonable period following the date of the judgment, calculated as of the date of judgment; (d.) additional compensatory damages within the jurisdiction of this court[.][75]

---

[73] Notice of Removal at 3.

[74] *Id.* at 6.

[75] Pet. at ¶ 28.

## B. Brown – Qualified Transaction Arguments

¶67    Brown opposes Business Court jurisdiction, arguing that this is a statutory action based on allegations of racial discrimination and not an action regarding the internal affairs of an organization nor a qualified transaction.

¶68    Brown argues that there is no qualified transaction here because: (i) the $5 million amount in controversy has not been met and (ii) the only cause of action alleged in his petition is a statutory cause of action for employee discrimination and the fact that the damages calculation is related to a contractual obligation does not make this an action "aris[ing] out of a qualified transaction."

## C. Analysis and Application

¶69    Section 25A.004 of the Government Code defines the Business Court's jurisdiction. Section 25A.004(d) establishes jurisdiction for an action "arising out of a qualified transaction" when "the amount in controversy exceeds $5 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs." A "qualified transaction" is a "transaction or series of related transactions" under which a party "pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $5 million."[76]

---

[76] TEX. GOV'T CODE §§ 25A.004(d)(1) & (14)(A).

31

¶70    In *Cadence McShane*, this Court, applying Texas Supreme Court precedent, made clear that "the plain and common meaning of the phrase 'arising out of' means originating from, stemming from, flowing from, or resulting from.[77] Further, the Court found "arising out of" was analogous to "but for causation" which it described as one "without which the event could not have occurred."[78]

¶71    While "arising out of" may be applied broadly, it is clear that the transactions at issue here are not a but-for cause of this litigation. Brown claims ExxonMobil discriminated against him on the basis of his race when it terminated him. Brown's damages claim concerning the annual discretionary RSUs does not involve the interpretation of the Incentive Program's terms. In fact, Brown "does not dispute [ExxonMobil's] ability to withhold any employee benefit if allowed to do so under a relevant agreement or internal company document."[79]    Brown claims ExxonMobil's decision to forfeit his incentive compensation, which consisted of discretionarily awarded RSUs, was discriminatory since "non-Black executives who violated a Business Conduct Standard of comparable seriousness have been

---

[77] *Cadence McShane Constr. Co. LLC v. Ryan BB-Blockhouse Creek, LLC*, 2025 Tex. Bus. 43, ¶ 18, 725 S.W.3d 434, 439 (3d Div.).

[78] *Id.*

[79] Pet. ¶ 13.

allowed to keep their previously granted incentive awards."[80]  Brown's claim is based solely on the THCRA and he relies on the provisions in the THCRA as the basis for his claim of discrimination and damages occasioned by the alleged discrimination.  Brown's action is a standalone statutory cause of action not based on a dispute over the terms of the Incentive Program.

¶72  Brown pleads a single cause of action alleging employment discrimination and seeks more than just compensation for the damages resulting from the forfeited RSUs, chiefly Brown seeks, "the back pay, plus prejudgment interest as provided by law, from the date of the adverse employment action until the date of judgment," "compensatory damages," and "exemplary damages."[81] Thus, the RSUs are one of several damages claims Brown is pursuing and are not a "but-for" cause of the litigation.

¶73   Brown's claim under Section 21.051 of the TCHRA does not "arise out of" a qualified transaction.  Instead, Brown claims that based on his race ExxonMobil terminated him and as a result, among other damages, he lost out on receiving discretionary compensation in the form of RSUs from ExxonMobil's Incentive Program.  Thus, the Court lacks jurisdiction of this action pursuant to Section 25A.004(d).

---

[80] *Id.* ¶ 14.

[81] *Id.* ¶ 28.

¶74   For the foregoing reasons, Plaintiff's Motion to Remand is hereby **GRANTED**.  It is therefore **ORDERED** that the above captioned case be remanded to the 11th District Court of Harris County.

_Patrick K. Sweeten_

PATRICK K. SWEETEN
Judge of the Texas Business Court
Third Division, Sitting by Assignment
in the Eleventh Division

DATED: May 29, 2026